Joseph B. **UMPLEBY** and Wasatch Development Co., Plaintiffs,

v.

Stewart L. **UDALL**, Secretary of the Interior, Defendant.

Civ. A. No. 8156.

United States District Court
D. Colorado.

May 31, 1968.

Edward N. Juhan and Winner, Berge, Martin & Camfield, Fred M. Winner, Denver, Colo., for plaintiffs.

Lawrence M. Henry, U. S. Atty., for the District of Colorado, Richard T. Spriggs, Asst. U. S. Atty., Denver, Colo., and Thomas L. McDevitt, Atty., Lands and Natural Resources Division, Justice Dept., Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

This is a civil action seeking judicial review of administrative proceedings of the Department of the Interior, and other relief. Jurisdiction exists under the Administrative Procedure Act, 5 U.S.C.A. §§ 701–706. Brennan v. Udall, 379 F.2d 803 (10th Cir. 1967), cert. denied, 389 U.S. 975, 88 S.Ct. 477, 19 L.Ed.2d 468 (1968). Trial was held, briefs have been tendered by both sides, and the case now stands submitted.

Plaintiffs claim an interest in certain oil shale placer mining claims, Carbon Nos. 5, 6, 7, & 8, in Garfield County, Colorado. These claims, among others, were located under the applicable mining laws by plaintiffs' predecessors in interest in April 1918. The dispute between the parties in this action centers upon the status of Carbon No. 6, one of these four claims.[1]

Initial application for mineral patent on Carbon No. 6 was made in 1925. After a series of administrative hearings and proceedings pertaining to the claim, in 1932 the Commissioner of the General Land Office declared Carbon No. 6 null and void for failure of claimants to have made adequate discovery of mineral on the claim prior to the passage of the Mineral Leasing Act in 1920. (Commissioner's decision, Dec. 19, 1932).

The Secretary of the Interior affirmed this decision (Secretary's decision, H. Comer Wolf et al., A. 17234, June 28,

1. Discovery on Carbon Nos. 7 and 8 was not challenged by the Department of Interior, and these two claims were patented in 1932. Discovery was not questioned on Carbon No. 5, but as the nullification of Carbon No. 6 would render Carbon No. 5 noncontiguous to Carbon Nos. 7 and 8, the status of No. 5 depends on the adjudication with respect to Carbon No. 6. 30 U.S.C.A. sec. 36.

1933) except for one modification. After reviewing the evidence presented at the 1932 Commissioner's hearing, the Secretary determined that claimants should have a further opportunity to present evidence on one aspect of their assertions that they had made sufficient discovery. One of the original locators, Joe T. Juhan, testified at the Commissioner's hearing that he had discovered an outcropping of very rich shale in 1918 within the boundaries of Carbon No. 6. While the Secretary felt the evidence substantiating such a rich discovery was weak, he remanded the decision to the Commissioner on this factual question, giving claimants 60 days in which to submit convincing evidence that Juhan did in fact find this rich outcropping.[2]

Within the prescribed 60-day period claimants submitted the affidavit of mining engineer Horace G. Slusser. The affidavit described Slusser's exploration and examination of the Carbon No. 6 claim, and stated that Slusser did find a rich outcropping of oil shale. After receiving this affidavit, the Commissioner requested the Interior Department Division of Investigations to verify these representations of Slusser.

For unexplained reasons no further action was taken for several years. In 1942 a report was submitted by Interior field examiner W. H. Koch in response to the Commissioner's 1935 request for verification of the Slusser affidavit. On the basis of this Koch report the Commissioner concluded that there had in fact been no rich discovery of oil shale within the limits of Carbon No. 6.[3] Having decided the one issue which had been left open by the 1933 decision of the Secretary, the Commissioner declared Carbon No. 6 null and void for lack of sufficient discovery. This 1943 Commissioner's decision was never appealed to the Secretary.

In 1959 plaintiffs herein applied to the Colorado Land Office Manager of the Bureau of Land Management for a mineral patent on the Carbon No. 6 claim. This application was rejected on grounds that the claim had been declared null and void in 1943. This rejection was affirmed by the Director of the Bureau of Land Management (1960) and by the Secretary of the Interior (1963).[4] The

---

2. The 1933 Secretary's decision makes clear that, except for the factual question of whether Juhan did actually discover this particular outcropping of rich shale on Carbon No. 6 in 1918, the Secretary was in accord with the earlier Commissioner's decision (1932) that the other evidence presented by claimants was insufficient to support a valid discovery on the claim:

"The case pivots not on the question whether the lean showings of oil in the shaley sandstone found by the mining engineers after the leasing act would have been a discovery if found before the act, but whether Juhan found the rich shale he has described at the time of the survey. His testimony as hereinbefore indicated is of poor evidentiary quality. It has no direct or substantial corroboration and is in fact incongruous with the other evidence as to observed geological conditions, and therefore can not be accepted as establishing the validity of the claim. If there is any such stratum of shale exposed on or near the surface within the area in which he locates it, that fact

should be capable of demonstration, and and if demonstrated, it would be regarded as sufficient corroboration of his evidence of a timely discovery. No mere identification of some lean shale or sandstone containing negligible quantities of oil at the discovery point would lend any support to his testimony." H. Comer Wolf et al., (Secretary's decision, June 28, 1933), p. 6.

3. Examiner Koch stated that he followed the path described by Slusser and did find a rich outcropping of oil shale which he felt was the same one Slusser had found. However, his measurements showed that this outcropping was unquestionably located on Carbon No. 7, outside the limits of the Carbon No. 6 claim.

4. This Secretary's decision, Wasatch Development Co. et al., A-28674 (May 16, 1963) was actually written by the Assistant Solicitor, Land Appeals, Department of the Interior, under proper administrative delegation. For convenience here it will be referred to as the Secretary's decision.

Secretary's decision refused to reopen the issue of discovery with regard to Carbon No. 6:

"The appellants contend that the decision declaring the Carbon No. 6 null and void was erroneous and submit a number of affidavits in support of this contention and of their request that the case be reopened to permit them to show that the Carbon No. 6 is a valid claim. Since the Commissioner's decision declaring that the claim was null and void became final 20 years ago, the merits of the previous contest and subsequent proceedings will not be reconsidered now, in the absence of a compelling legal or equitable reason for reopening the case. Orderliness in the administration of public lands as well as finality of administrative decision precludes reopening cases which were closed finally many years ago, and unless there are exceptional equitable or legal considerations justifying reconsideration of the question, a decision which has remained unchallenged and was acquiesced in for 16 years by the patent applicants will not be reopened by the Department. See Gabbs Exploration Company, 67 I.D. 160, 165–166 (1960); Edward Christman et al., 62 I.D. 127 (1955); H. W. Rowley, 58 I.D. 550 (1943)."

Plaintiffs now seek a determination by this Court that there are compelling reasons for reopening in departmental proceedings the issue of discovery with regard to Carbon No. 6. They have additionally requested relief in the nature of mandamus under the Mandamus and Venue Act of 1962, 28 U.S.C.A. §§ 1361, 1391, and relief under the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202.

While in their complaint the plaintiffs allege several deficiencies in departmental proceedings from 1933 to 1963, and also assert that the policy followed by the Department with regard to oil shale lands constitutes a violation of due process, their main ·contention at the present time is that sufficiently compelling reasons exist for this Court to order further departmental proceedings on the issue of discovery on Carbon No. 6. The basis for this contention is their allegation that the Interior Department failed to disclose the full contents of the investigative report of mineral examiner Koch. Plaintiffs allege that this non-disclosure was arguably responsible for plaintiffs' predecessors' failure to appeal the 1943 Commissioner's decision to the Secretary; the non-disclosure also prevented plaintiffs from raising material issues before the Secretary in 1963. Plaintiffs contend that this non-disclosure constitutes constructive fraud by the Department, or that it at least contributed to mutual mistake of fact between plaintiffs and the Secretary in 1963.

The mineral examiner's report in question, prepared by W. H. Koch, was relied upon by the Commissioner in 1943 to declare Carbon No. 6 null and void.[5] The Koch report, part of the Department's mineral entry file on Carbon No. 6, was classified "Confidential: Not for Public Inspection." Consequently, plain-

5. In part, mineral examiner Koch concluded that the rich discovery of oil shale allegedly made by locator Juhan and later verified by engineer Slusser was in fact not on the Carbon No. 6 claim, but was located on the adjacent claim, Carbon No. 7. On the basis of this conclusion in the Koch report with regard to the sole issue concerning discovery left open by the 1933 Secretary's decision, the Commissioner declared Carbon No. 6 null and void for lack of sufficient discovery.

In addition to his findings with regard to the alleged rich discovery of oil shale, examiner Koch's report described his further exploration of the Carbon No. 6 claim and attested to finding some lean traces of oil shale in certain excavations on the claim. On the basis of these lean findings on Carbon No. 6, and on the basis of the existence of a rich outcropping on an adjacent claim of a formation probably underlying Carbon No. 6, Koch concluded that the factual situation was almost identical to that of the case of Freeman v. Summers, 52 L.D. 201 (1927), where findings of a claimant were held sufficient to support a valid discovery.

tiffs did not gain access to this report until after the 1963 Secretary's decision.[6] They were thus not aware that a rich outcropping of shale had been found by Koch on adjacent Carbon No. 7 claim, nor were they aware that he had concluded that the Freeman-Summers [7] elements of discovery were present with regard to Carbon No. 6.[8]

Plaintiffs' assertions of constructive fraud with regard to the non-disclosure of the contents of the Koch report have merit only if their interests were somehow prejudiced by non-disclosure. Viewed in this light, the contents of the Koch report made available to plaintiffs subsequent to 1963 provide no new material elements for reconsideration by the Secretary.

In the first instance, the Koch report itself was part of the administrative record before the Secretary in 1963, and thus was accessible to the Secretary. It is true, of course, that plaintiffs' lack of knowledge of the contents of the report prevented them from pointing out what they considered salient parts of the report to the Secretary.

However, the weakness of plaintiffs' contention arises from the fact that the part of the Koch report which relates the present case to *Freeman-Summers* is based on misconception. These Koch statements were both gratuitous and erroneous and could not have furnished support to plaintiffs either before the Commissioner in 1943 or before the Secretary in 1963. Thus, there was no reason for the Department to disclose the report to plaintiffs or their predecessors, and no prejudice resulted from the failure to disclose.

Koch did report observing a rich outcropping of oil shale, probably also the one found by Juhan and Slusser, but it was not within the boundaries of Carbon No. 6. It was on the adjacent Carbon No. 7. This failed to satisfy the requirement that some actual mineral discovery must be made within the boundaries of the claim. 30 U.S.C.A. secs. 23, 35. Discovery of a rich outcropping of a mineral bed on a nearby claim does not in and of itself satisfy discovery requirements.

In Freeman v. Summers, 52 L.D. 201 (1927), the Secretary of the Interior held that discovery requirements were satisfied where claimants had discovered lean tracings of oil shale upon their claim, which indicated that they had touched a geologic formation containing large amounts of oil shale, known to underlie the surrounding area. Such was not the case with regard to Carbon No. 6. Claimants did not make any such lean findings of shale which indicated to them that they had found an underlying geologic formation. Their testimony regarding discovery was that they had found a rich outcropping of oil shale on Carbon No. 6. Any question of a *Freeman-Summers* type of discovery was eliminated in the departmental proceedings of 1932–1933. The sole issue which remained open for resolution by the Commissioner in 1943 pertained to the possible existence of a rich outcropping of shale on Carbon No. 6. The fact that examiner Koch had found such a rich outcropping on Carbon No. 7 added no credence to claimants' contentions that they had actually found such an outcropping on Carbon No. 6. Having no bearing on the issue in dispute, the failure of the Department to disclose this aspect of the Koch report was not in the slightest degree prejudicial to plaintiffs.

Secondly, in addition to stating his findings with regard to the disputed rich outcropping of oil shale, Koch also included in his report a description of his further explorations on Carbon No. 6, finally concluding that the conditions on Carbon No. 6 essentially duplicated the conditions on the claim involved in the *Freeman-Summers* decision. It is clear,

---

6. Plaintiffs became aware of the full contents of the Koch report through discovery procedures after the present action was filed in this Court.

7. See footnote 6, supra.

8. See footnote 5, supra.

however, that Koch's conclusions regarding a *Freeman-Summers* type discovery on Carbon No. 6 were based on an erroneous understanding of fact.

Koch verified traces of lean oil shale in certain excavations upon Carbon No. 6, specifically in excavations 19 and 20. These lean traces of shale, coupled with the knowledge that a rich formation, outcropping on a nearby claim, probably underlay Carbon No. 6, seemed to Koch to duplicate the conditions in the *Freeman-Summers* case. However, it had been stipulated by the parties in the 1932 proceedings before the Commissioner with regard to Carbon No. 6 that the five excavations upon the claim, including excavations 19 and 20, had not been made until 1924 or thereafter. (U. S. v. H. Comer Wolf et al., Commissioner's decision, Dec. 19, 1932, p. 3). Therefore, any traces of shale found in these excavations could have no bearing on the question of whether actual discovery was made prior to the passage of the Mineral Leasing Act in 1920, after which time oil shale claims could no longer be validly located. It follows that Koch's erroneous comments on discovery would have given claimants no additional grounds to argue that discovery had in fact been made on Carbon No. 6. The non-disclosure of this part of the Koch report was not prejudicial to them.

As plaintiffs' assertions of constructive fraud have no merit, similarly there is no basis for determining that the Secretary was under some mistake of fact regarding the contents of the Koch report when he refused to reopen the issue of discovery with regard to Carbon No. 6 in 1963. There was no apparent necessity for the Secretary to have made specific mention of that report.

We have examined the Supreme Court's ruling in Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), concerning suppression of evidence by a state prosecutor in a criminal action. The principle of that case is salutary, but the doctrine there enunciated is not applicable to the instant case in any event, since we have concluded that the elements of the Koch report not mentioned by the Secretary were not material to the issues under consideration with regard to discovery on the Carbon No. 6 claim.

 Under some circumstances, the interests of justice dictate that administrative actions become final unless challenged within a timely period. See Gabbs Exploration Company v. Udall, 114 U.S. App.D.C. 291, 315 F.2d 37 (1963), cert. den. 375 U.S. 822, 84 S.Ct. 61, 11 L.Ed. 2d 56 (1963); Pacific Oil Company v. Udall, 273 F.Supp. 203 (D.C.Colo.1967). We are in accord with the Secretary's 1963 decision that there are neither legal nor equitable considerations which compel reopening the issue of the validity of the claim in question.

The Secretary's decision in this regard was neither arbitrary, capricious, nor an abuse of discretion, and is hereby affirmed.