*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0211P (6th Cir.)
File Name: 04a0211p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CITIZENS AGAINST THE
PELLISSIPPI PARKWAY
EXTENSION, INC.,
  *Plaintiff-Appellee,*

v.

NORMAN Y. MINETA,
Secretary of the United States
Department of Transportation,
official capacity; MARY
PETERS, Administrator of the
Federal Highway
Administration, official
capacity; CHARLES BOYD,
Division Administrator for the
Nashville Division, FHWA,
official capacity,
  *Defendants-Appellants,*

J. BRUCE SALTSMAN,
Commissioner of the
Tennessee Department of
Transportation, individual and
official capacities; CHARLES
BUSH, Manager of

No. 02-6536

Environmental Planning and
Permits for TDOT, individual
and official capacities,
  *Defendants.*

_____

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 02-00549—Todd J. Campbell, District Judge.

Argued: April 28, 2004

Decided and Filed: July 7, 2004

Before: MARTIN and ROGERS, Circuit Judges; BELL,
Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** John L. Smeltzer, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellants. Joe W. McCaleb, Hendersonville, Tennessee, for
Appellee. **ON BRIEF:** John L. Smeltzer, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellants. Joe W. McCaleb, Hendersonville, Tennessee, for
Appellee.

_____

[*]The Honorable Robert Holmes Bell, Chief United States District
Judge for the Western District of Michigan, sitting by designation.

---

**OPINION**

---

ROGERS, Circuit Judge. To comply with the National Environmental Policy Act (NEPA), the Federal Highway Administration (the "FHWA"), in conjunction with federal and state agencies, issued a finding of no significant impact ("FONSI") for a proposed 4.5 mile extension of a highway in Tennessee. Subsequently, a citizens group opposed to the extension brought suit in federal district court alleging that the agency's finding violated NEPA because it did not address a specific federal regulation. The district court issued a broad preliminary injunction that prevented state or federal agencies from "planning, financing, contracting, land acquisition, [or] construction" for the highway extension. In response, the FHWA withdrew the FONSI and sought a voluntary remand so that it could reconsider its decision. The district court denied the FHWA's motion for a remand. The FHWA now appeals, arguing that it acted properly by withdrawing the FONSI, that the district court erred in refusing to modify the injunction to allow the agency to reconsider the FONSI, and that the agency is entitled to a voluntary remand to consider the regulation that it did not address in the preparation of the initial FONSI. Because the district court erred in denying the FHWA an opportunity to revisit its decision, we reverse the judgment of the district court and remand the case to the district court with instructions to vacate or modify the injunction so as to allow the FHWA to comply with NEPA.

Tennessee state route 162, the Pellissippi Parkway, presently runs from state route 62 in Knox County and ends at state route 33 in adjacent Blount County. The Tennessee Department of Transportation (the "TDOT") proposed the Pellissippi Parkway Extension Project, which would extend the Pellissippi Parkway 4.5 miles to relieve congestion in the

Smoky Mountain gateway towns of Maryville and Alcoa. The project calls for the construction of a four-lane limited access highway with a grassy median, and would require the acquisition of 155 acres of new right-of-way land.

There is no dispute that the project is a "major Federal action" subject to the National Environmental Policy Act. *See* 42 U.S.C. § 4332(C); *see generally* 42 U.S.C. § 4321 *et seq.* NEPA sets forth essentially procedural requirements to assess environmental impacts of major federal actions. *See* 42 U.S.C. § 4332(C); *Southwest Williamson County Cmty. Ass'n v. Slater*, 243 F.3d 270, 278 (6th Cir. 2001). In general, NEPA requires agencies to prepare an Environmental Impact Statement (an "EIS") for any major federal action that significantly affects the quality of the human environment. 42 U.S.C. § 4332(C). An EIS provides an extensive explanation of the environmental impacts of, and possible alternatives for, a proposed major federal action. *Id.*

Regulations promulgated by the Council on Environmental Quality, implementing NEPA, require federal agencies to prepare an EIS for any proposed major federal action, unless the action is categorically excluded or unless the project would not have a significant impact on the environment. *See* 40 C.F.R. §§ 1500.3, 1501.4. If an agency is unsure as to whether a project would significantly affect the quality of the human environment, an agency may postpone the preparation of an EIS and prepare an Environmental Assessment (an "EA"), which briefly provides sufficient evidence and analysis for determining whether there is a significant environmental impact. *Id.*; 40 C.F.R. § 1508.9. After analyzing the EA, the agency decides whether to prepare an EIS or issue a finding of no significant impact. 40 C.F.R. § 1501.4(e); 40 C.F.R. § 1508.13. A FONSI briefly presents the reasons why an agency action will not create a significant environmental impact and why an EIS will not be issued. 40 C.F.R. § 1508.13.

FHWA regulations in turn guide that agency's determination whether to prepare an EIS or an EA and a FONSI. These regulations divide FHWA actions into three classes. "Class I" actions "significantly affect the environment and require an EIS." 23 C.F.R. § 771.115(a). "Class II" actions do not "have a significant environmental effect," and thus do not require an EIS or an EA. 23 C.F.R. § 771.115(b). The remaining category of Class III actions encompasses those actions "in which the significance of the environmental impact is not clearly established." 23 C.F.R. § 771.115(c). Class III actions necessitate the preparation of an EA "to determine the appropriate environmental document required." *Id*. The FHWA regulations list "examples" of Class I projects, and the examples include "(1) A new controlled access freeway" and "(2) A highway project of four or more lanes on a new location." 23 C.F.R. § 771.115(a).

The FHWA issued an EA for the extension project on October 3, 2001. Roughly seven months later, on April 24, 2002, the FHWA issued a FONSI for the project. Neither the EA nor the FONSI discussed the apparent Class I nature of the project. However, the FONSI allowed the project to move forward. 23 C.F.R. § 771.113(a)(1).

On June 7, 2002, a not-for-profit corporation called the Citizens Against the Pellissippi Parkway Extension, or CAPPE, filed suit against the FHWA and TDOT officials in federal district court to enjoin further action on the project. CAPPE consists of Blount County residents who own property that would be affected by the project. The complaint alleged that because the project fit within Class I of the FHWA regulations, the FONSI needed to explain why an EIS was not needed, in light of the provisions of 23 C.F.R. § 771.115(a).

On June 26, 2002, in response to the lawsuit, Charles S. Boyd, the Tennessee Division Administrator for the FHWA,

informed the TDOT that the FHWA was suspending federal funding for the project until further notice. Thereafter, the district court held a hearing on the injunction. During the hearing, a TDOT representative informed the district court that the TDOT was seriously considering continuing with the project even in the absence of federal funds. On July 17, 2002, the district court granted CAPPE a preliminary injunction that stated:

> all Defendants and their officers, agents, employees, servants, attorneys, and all persons in active concert or participation with them are hereby restrained and enjoined from continued planning, financing, contracting, land acquisition, and construction of a four-lane, controlled access highway called the Pellissippi Parkway Extension. . . . pending further order of the Court.

Over a month later, on August 29, 2002, Boyd informed the TDOT that the FHWA was withdrawing the FONSI for the project. Boyd's letter to the TDOT stated that the FHWA was taking "additional administrative actions" on the project, and as a consequence all federal funds would be suspended from the project. The letter also warned the TDOT that if the state were to proceed with the project, the state would "jeopardize the project for future federal-aid funding."

Subsequently, the FHWA[1] moved the district court for a voluntary remand of the case to the FHWA for further review or to dismiss the case as moot because the FHWA had withdrawn the FONSI and stopped the federal funding of the project. On October 1, 2002, the district court denied the

---

[1]CAPPE sued three federal officials and two Tennessee officials. For convenience, in discussing the procedural actions of the parties in this litigation, we refer to the federal defendants as FHWA and the Tennessee defendants as TDOT.

FHWA's motion because of Tennessee's expressed desire to continue with the project absent federal funding. The FHWA filed a motion for reconsideration, but the district court denied that motion as well. The FHWA now appeals.[2]

The district court improperly failed to vacate or modify the injunction, because in doing so it precluded the agency from acting to comply with the very statute that formed the basis for the lawsuit. The injunction essentially prevents the FHWA from all "planning" associated with the project, including the planning necessary to complete an EIS or another FONSI. Although the FHWA's motion to the district court was styled as a motion for voluntary remand, the motion may appropriately be considered as a motion to modify the injunction so that it could continue to prepare a proper FONSI or EIS. The district court itself considered the motion to remand as an attempt by the FHWA to dissolve the injunction and refused to do so, citing the potential for irreparable harm to CAPPE.

It is only if we consider the motion as one to deny modification of the injunction that we even have jurisdiction over an appeal from the district court's denial of the motion. While we generally lack jurisdiction over interlocutory appeals, 28 U.S.C. § 1292(a)(1) gives this court jurisdiction over interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1); *see also Linville v. Teamsters Misc. & Indus. Workers Union, Local 284*, 206 F.3d 648, 650 (6th Cir. 2000) (treating a motion for

---

[2]CAPPE moved this court to dismiss the instant appeal for lack of jurisdiction. On February 6, 2003, a motions panel of this court denied that motion on the ground that the district court's order of October 1, 2002, was appealable "under 28 U.S.C. § 1292(a)(1) as an order refusing to vacate the preliminary injunction entered by the district court of July 17, 2002." Accordingly we do not have before us the district court's denial of the FHWA's motion to dismiss the suit altogether.

a declaratory judgment and the dissolution of an injunction as a motion to modify the injunction).

The district court in this case articulated no tenable reason for continuing injunctive relief against the FHWA. In the absence of any such reason, it is an abuse of discretion to prevent an agency from acting to cure the very legal defects asserted by plaintiffs challenging federal action. This court has recognized the inherent authority of an agency to reconsider a prior decision. *Belville Mining Co. v. United States*, 999 F.2d 989, 997 (6th Cir. 1993) ("Even where there is no express reconsideration authority for an agency, however, the general rule is that an agency has inherent authority to reconsider its decision, provided that reconsideration occurs within a reasonable time after the first decision."); *see also Cissell Mfg. Co. v. United States Dep't of Labor,* 101 F.3d 1132, 1136 (6th Cir. 1996) (holding in a review of an adjudicative proceeding that "[i]t is well settled that when an agency makes an error of law in its administrative proceedings, a reviewing court should remand the case to the agency so that the agency may take further action consistent with the correct legal standards"). Accordingly, when an agency seeks a remand to take further action consistent with correct legal standards, courts should permit such a remand in the absence of apparent or clearly articulated countervailing reasons. Otherwise judicial review is turned into a game in which an agency is "punished" for procedural omissions by being forced to defend them well after the agency has decided to reconsider.

By analogy, courts typically grant an agency's motion to remand a case if there has been an intervening change in the law or new evidence. *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001) ("A remand is generally required if the intervening event may affect the validity of the agency action."); *see also Cissell Mfg. Co.,* 101 F.3d at 1136; *Ethyl Corp. v. Browner,* 989 F.2d 522, 524 (D.C. Cir. 1993) (After new evidence was presented to the agency, the court

granted the motion to remand and stated "[w]e commonly grant such motions, preferring to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete.").

Although there is no allegation of new evidence or a change in the law in the present case, the same considerations of judicial efficiency apply. As the Federal Circuit in *SKF USA* explained in careful dictum, voluntary remand is appropriate even without a change in the law or new evidence:

> [E]ven if there are no intervening events, the agency may request a remand (without confessing error) in order to reconsider its previous position. *It might argue, for example, that it wished to consider further the governing statute, or the procedures that were followed. It might simply state that it had doubts about the correctness of its decision or that decision's relationship to the agency's other policies.* Here, the reviewing court has discretion over whether to remand. *See Southwestern Bell Tel. Co. v. Fed. Communications Comm'n*, 10 F.3d 892, 896 (D.C. Cir. 1993) (noting that the court had previously allowed a remand to the FCC where the FCC sought voluntary remand "to give further consideration to the matters addressed in the [FCC's] orders") . . . ; *Wilkett v. Interstate Commerce Comm'n*, 710 F.2d 861, 863 (D.C. Cir. 1983) (noting that the court had granted the Commission's motion for remand for purposes of reconsideration); *see also Anchor Line Ltd. v. Fed. Maritime Comm'n*, 299 F.2d 124, 125 (D.C. Cir. [1962]) (noting that "when an agency seeks to reconsider its action, it should move the court to remand or to hold the case in abeyance pending reconsideration by the agency") . . . . [I]f the agency's concern is substantial and legitimate, a remand is usually appropriate.

*SKF USA, Inc.*, 254 F.3d at 1029 (emphasis added).[3]

To be sure, an agency's reconsideration of its own decision may in some contexts be unwarranted, or even abusive. As the Fifth Circuit indicated in *Macktal v. Chao*, 286 F.3d 822, 826 (5th Cir. 2002), an "agency may not reconsider its own decision if to do so would be arbitrary, capricious, or an abuse of discretion." And the Federal Circuit recognized in *SKF USA* that

> [a] remand may be refused if the agency's request is frivolous or in bad faith. For example, in *Lutheran Church-Missouri Synod v. Fed. Communications Comm'n*, 141 F.3d 344, 349 (D.C. Cir. 1998), the Court of Appeals for the District of Columbia Circuit refused the FCC's "novel, last second motion to remand," noting that the remand request was not based on a confession of error and was instead based on a prospective policy statement which would not bind the FCC. *See id.* The court added that "the Commission has on occasion employed some rather unusual legal tactics when it wished to avoid judicial review, but this ploy may well take the prize." *Id.*

*SKF USA, Inc.*, 254 F.3d at 1029. Similarly, this court qualified its recognition of an agency's inherent authority to reconsider by referring to reconsiderations that occur "within a reasonable time." *Belville*, 999 F.2d at 997. These limitations recognize that there are "two opposing policies [that] immediately demand recognition: the desirability of finality, on the one hand, and the public interest in reaching what, ultimately, appears to be the right result on the other." *Civil Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 321 (1961) (footnote omitted).

---

[3]None of the cases cited in this passage analyze the decision to grant or deny an agency's motion to remand the case.

CAPPE has not demonstrated any examples of detrimental reliance on the previous FONSI that would militate against allowing the agency to withdraw the FONSI. The FHWA cannot be accused of causing needless delay, because this is not a case in which delay works at all against the interest of the plaintiff. Indeed, the only apparent advantage to CAPPE in *preventing* the remand is the delay involved in forcing the agency to litigate on a concededly insufficient record. Instead, undelayed agency reconsideration of the potential environmental impacts of a project furthers the purpose of NEPA, which seeks to ensure that federal agencies take a "hard look" at the environmental consequences of significant federal actions. Thus, the public interest as well as the purpose of NEPA would permit an agency to reconsider a FONSI.

The district court based its denial of the motion to voluntary remand primarily on its perception of the possible irreparable injury that would come with a voluntary remand—namely, the potential that the TDOT would continue the project on its own without federal funding, thus making the FHWA and compliance with NEPA irrelevant. This consideration in no way supports the injunction against FHWA, however, since state continuation of the project without federal funding would not implicate NEPA in the first place. And even if a purely state-funded project were somehow subject to the federal NEPA, the district court could simply modify the injunction to allow the FHWA to reconsider and reissue the relevant NEPA documents while continuing the injunction in other respects. The district court could thereby prevent harm to the plaintiffs while conserving the resources of the parties and the judiciary by not mandating the complete judicial review of a FONSI that is no longer issued and that has been acknowledged by the FHWA as deficient.

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND the case to the district court

with instructions to vacate or modify the preliminary injunction in accordance with this opinion.