**FRITO–LAY, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF LABOR, et al., Defendants.**

No. 3:12–cv–1747–B–BN.

United States District Court,
N.D. Texas,
Dallas Division.

Signed Feb. 11, 2014.

Dan Hartsfield, Karen E. Griffin, Talley Ray Parker, Jackson Lewis LLP, Dallas, TX, for Plaintiff.

John Kenneth Theis, U.S. Department of Justice, Washington, DC, for Defendants.

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

DAVID L. HORAN, United States Magistrate Judge.

This action has been referred to the United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and an order of reference. Pending before the Court are Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment [Dkt. No. 42], Plaintiff's Motion for Summary Judgment on Count Seven: the Final Order is not Supported by Substantial Evidence [Dkt. No. 58], and Defendants' Motion for Voluntary Remand [Dkt. No. 71]. For the reasons stated herein, Defendants' Motion for Voluntary Remand should be granted, the Final Order should be remanded for reconsideration in accordance with these findings, conclusions, and recommendation, and the pending Motions to Dismiss and for Summary Judgment should be denied without prejudice as moot.

### Background

Plaintiff Frito–Lay, Inc. ("Plaintiff" or "Frito–Lay") is a federal contractor. *See* Dkt. No. 32 at 4 (¶ 12). As such, it is subject to Executive Order ("E.O.") 11246 and cannot "discriminate against any employee or applicant for employment" and must "take affirmative action to ensure that applicants are employed" without regard to any discriminatory characteristics. E.O. 11246, § 202(1). In furtherance of this effort, the Department of Labor ("DOL"), which is responsible for implementing E.O. 11246, *see id.* § 201, promul-

gated regulations under which its Office of Federal Contract Compliance ("OFCCP") enforces compliance, *see* 41 C.F.R. ch. 60. Under the regulations and E.O. 11246, Frito–Lay, as a government contractor, is required to provide OFCCP with access to its books, records, and accounts "for purposes of investigation to ascertain compliance with such rules, regulations, and orders." 41 C.F.R. § 60–1.4(a)(5); *see also* E.O. 11246, § 202(5).

On July 13, 2007, OFCCP initiated a compliance review of Frito–Lay's Dallas Baked facility via a "Scheduling Letter." *See* Administrative Record [Dkt. No. 17] ("AR") at 94–98. In the letter, OFCCP asked Frito–Lay to provide data relating to its hiring practices for January 1, 2006 through June 30, 2007, and Frito–Lay complied. *See id.* at 97–98; Dkt. No. 32 at 9 (¶ 31). After this initial request, OFCCP requested additional data, going back to July 13, 2005, and for the period of July 13, 2007 through December 31, 2007, and Frito–Lay complied with the request. *See* AR at 20, 167, 260–61; Dkt. No. 32 at 9 (¶ 32).

Upon analyzing the data it received, OFCCP claimed to find a disparity in the hiring rates of females as compared to males, and, on that basis, on November 10, 2009, OFCCP requested additional post-Scheduling Letter data ("2008 and 2009 data"). *See* AR at 6. Frito–Lay did not comply with this second request. *Id.* at 22–23. OFCCP claimed that Frito–Lay's refusal to provide the 2008 and 2009 data violated E.O. 11246 and the regulations promulgated pursuant to that order as well as Frito–Lay's contractual obligations to the federal government. *See id.* at 7.

OFCCP brought an Administrative Complaint against Frito–Lay, seeking an order that Frito–Lay be required to provide the requested information. *See id.* at 5–10. In its Administrative Complaint, OFCCP described the disparity that prompted the data request as follows:

> Relying on the information [Frito–Lay] provided, OFCCP conducted its initial desk audit. The initial analysis of hiring at the Dallas Baked facility for full-time entry level Warehouse/Material Handler positions ("Warehouse") for the period of June 13, 2006 through December 31, 2007 showed a disparity in the hiring rates of females as compared to males that was statistically significant at 3.26 standard deviations with a shortfall of 9 females.

*Id.* at 7.

An Administrative Law Judge recommended that a decision be entered in Frito–Lay's favor and that the Administrative Complaint be dismissed. *See id.* at 174. On appeal, the Administrative Review Board ("ARB") disagreed and ruled that Frito–Lay should produce the 2008 and 2009 data. Relying, at least in part, on the representation found in the Administrative Complaint related to the disparity and, by extension, the initial analysis, the ARB concluded that:

> We conclude that OFCCP has regulatory authority to request the 2008 and 2009 AAP data in furtherance of its 2007 Desk Audit. First, OFCCP was pursuing a concern about a statistically significant disparity in hiring women, specifically finding a 'disparity in hiring rates of females as compared to males that was statistically significant at 3.26 standard deviations ...' [citing Administrative Complaint, ¶ 12]. A statistical showing of two standard deviations has long been accepted as significant in adverse impact analysis.

AR at 353.

Frito–Lay seeks review of this decision in federal court. Defendants filed a motion to dismiss or, in the alternative, for

summary judgment based on the Administrative Record. *See* Dkt. No. 42; Dkt. No. 45–1. Plaintiff then filed a motion for leave to obtain discovery, which this Court granted in part. *See* Dkt. No. 52; Dkt. No. 57. Once this Court ruled on the discovery motion, the parties resumed briefing on Defendants' motion to dismiss, and Plaintiff filed its own motion for summary judgment. *See* Dkt. No. 58. Shortly after Plaintiff filed its motion for summary judgment, Defendants informed Plaintiff, and the Court, of their intention to seek limited remand. *See* Dkt. No. 61.

It appears that Defendants have reviewed the analysis cited in the Administrative Complaint and discovered potential errors in their analysis. More particularly, Defendants admit that, "[t]hough the Administrative Complaint indicated that the analysis showed a disparity in the hiring rates of females as compared to males at 3.26 standard deviations for 'full-time' positions, that figure actually applied to a disparity at that level of standard deviation for both full-time and part-time positions." Dkt. No. 72 at 10; Dkt. No. 72–1 at 4. Plaintiff identified this error in its motion for summary judgment. *See* Dkt. No. 59 at 26. Plaintiff also identified other alleged errors in the initial analysis, including the scope of the analysis—it represented two warehouses, not one as claimed—and the job titles—both material handlers and packers were covered. *See id.* at 12. Plaintiff also asserts that Defendants miscounted the total number of applicants, the number of male and female applicants, and the number of new hires for the full-time material handler position at the Dallas Baked Snack facility. *See id.* at 13. Both parties, then, agree that an error exists, *see* Dkt. No. 72 at 11, but Plaintiff contends that the scope of the error is larger than Defendants, *see* Dkt. No. 59 at 12–15.

Defendants argue that the Court should not make a ruling on the pending dispositive motions but rather should remand the case to the ARB and allow the ARB to make a re-determination based on a corrected complaint and record. *See* Dkt. No. 72 at 11. Defendants contend that such a result is both consistent with · well-established principles of administrative law and in the interest of judicial economy. *See id.* Plaintiff responds that the case should not be remanded because Defendants have not stated legally-supportable grounds for remand, that the Final Order should be vacated, that court-ordered remand would be either arbitrary and capricious or futile, and that remand at this stage would be premature. *See* Dkt. No. 74.

The undersigned will first address whether remand is appropriate and, if necessary, then address the arguments raised in the dispositive motions.

### Legal Standards

Courts have long recognized the propriety of voluntarily remanding a challenged agency action without judicial consideration of the merits, with or without admission of agency error. *See Carpenters Indus. Council v. Salazar,* 734 F.Supp.2d 126, 132 (D.D.C.2010). In fact, the United States Court of Appeals for the Fifth Circuit has acknowledged, without explicitly adopting, the generally accepted belief that, "in the absence of a specific statutory limitation, an administrative agency has the inherent authority to reconsider its decisions." *Macktal v. Chao,* 286 F.3d 822, 825–26 (5th Cir.2002) (citations omitted); *see also ConocoPhillips Co. v. United States EPA,* 612 F.3d 822, 832 (5th Cir.2010) ("Embedded in an agency's power to make a decision is its power to reconsider that decision.").

When an agency action is under review by a federal court, the agency may take one of five positions. *See SKF USA,*

*Inc. v. United States,* 254 F.3d 1022, 1027–28 (Fed.Cir.2001). First, the agency may choose to defend its decision on the grounds previously articulated by the agency. *See id.* at 1028. Second, it may seek to defend the agency's decision on grounds not previously articulated by the agency. *See id.* Third, the agency may seek a remand to reconsider its decision because of intervening events outside of the agency's control. *See id.* Fourth, even in the absence of intervening events, the agency may request a remand, without confessing error, to reconsider its previous position. *See id.* Finally, the agency may request a remand because it believes that its original decision was incorrect on the merits and it wishes to change the result. *See id.*

### Analysis

The true issue with respect to remand is whether voluntary remand is appropriate under the circumstances. While neither party agrees that the instant situation falls squarely within one of the five categories mentioned above, they do agree that Defendants' position is closest to the fifth category. "Defendants have identified an error in the administrative complaint that is discrete ... [a]nd ... seek to make a correction that may or may not cause the ARB to arrive at a different conclusion." Dkt. No. 78 at 6.

The undersigned finds the dispute over which of the "categories" Defendants' position aligns with to be of minimal consequence because no case law seems to indicate, and Plaintiff points to none, that a motion for voluntary remand must be denied if a defendant's position does not fit neatly into one of the categories. *See SKF,* 254 F.3d at 1027–28 ("It appears that when an agency action is reviewed by the courts, in general the agency may take one of five positions, though it is possible that

there may be remand situations that do not fall neatly into this taxonomy."); *Salazar,* 734 F.Supp.2d at 132 ("[C]ourts retain the discretion to remand an agency decision when an agency has raised 'substantial and legitimate' concerns in support of remand." (citations omitted)). Moreover, the undersigned finds that, even if it is not an exact fit, Defendants' position is very close to the fifth category.

Defendants highlight several principles that they contend support their request for remand. Specifically, Defendants state that courts should remand federal agency matters when (1) it involves a matter that has been placed by statute primarily in agency hands; (2) it is consistent with the principle that " 'embedded in an agency's power to make a decision is its power to reconsider that decision' "; and (3) it promotes judicial economy, such as here, because it permits the relevant agency to reconsider and rectify an erroneous decision without further expending judicial resources. *See* Dkt. No. 72 at 13–14 (citations omitted). Relying primarily on *Ethyl Corp. v. Browner,* 989 F.2d 522 (D.C.Cir.1993), Defendants argue that, when the above principles are applied to the instant case, they support remand.

Plaintiff disagrees. It contends that none of the cases on which Defendants rely, including *Ethyl Corp.,* support their position. *See* Dkt. No. 76 at 13–14. Plaintiff further argues that the three general principles cited by Defendants do not support remand. *See id.* at 16–20. Plaintiff also argues that the Final Order should be vacated due to the undisputed deficiencies contained therein, that a court-ordered remand would be either arbitrary and capricious or futile, and that remand would be premature at this juncture. *See id.* at 21–29.

█ "The reasonableness of an agency's reconsideration implicates two opposing

policies: 'the desireability of finality on one hand and the public's interest in reaching what, ultimately, appears to be the right result on the other.'" *Macktal,* 286 F.3d at 826 (citations omitted). As a result, an agency's inherent authority to reconsider its own decision is not unlimited; rather, an agency may not do so if it would be arbitrary, capricious, or an abuse of discretion. *See id.* (citing 5 U.S.C. § 706(2)(A)). "Reconsideration must also occur within a reasonable time after the first decision, and notice of the agency's intent must be given to the parties." *Id.*

Despite these general guidelines highlighted by the parties in their briefing, there are no hard and fast rules as to when voluntary remand is appropriate. *See* Toni M. Fine, *Agency Requests for "Voluntary" Remand: A Proposal for the Development of Judicial Standards,* 28 ARIZ. ST. L.J. 1079 (1997). Thus, while it is somewhat clear that granting a voluntary remand is only appropriate when such an action would not be arbitrary and capricious and occurs within a reasonable time, when trying to determine what circumstances warrant such a finding, the lack of guidelines becomes evident.

1. *Voluntary Remand Would not be Arbitrary and Capricious.*

 With respect to whether a voluntary remand would be "arbitrary, capricious, or an abuse of discretion," courts appear to focus on whether the agency's request for remand has been made in bad faith. *See SKF,* 254 F.3d at 1029. An example of bad faith would include an agency's request for remand that is not based on a confessed error but, rather, on a prospective policy statement that would not bind the agency. *See Lutheran Church–Missouri Synod v. FCC,* 141 F.3d 344, 349 (D.C.Cir.1998). If an agency's concern is substantial and legitimate, however, remand is usually appropriate. *SKF,* 254 F.3d at 1029.

In trying to determine what might constitute a substantial and legitimate concern, a review of relevant case law is instructive. Courts have found reconsideration appropriate where the record demonstrated that the reason for reconsideration was a legitimate concern that the determination "had serious procedural and substantive deficiencies," *see Belville Mining Co. v. United States,* 999 F.2d 989, 998 (6th Cir.1993); where new evidence or later-acquired information demonstrated a potential to change the agency's initial decision, *see Ethyl Corp.,* 989 F.2d at 523–24; *Salazar,* 734 F.Supp.2d at 134 (finding that, where later-acquired information raised "substantial and legitimate concerns" about the agency's findings, "[v]oluntary remand [would] preserve [the] Court's scarce judicial resources by providing the federal defendants' the opportunity to 'cure their own mistakes.'"); *Sierra Club v. Van Antwerp,* 560 F.Supp.2d 21, 24–25 (D.D.C.2008) (finding remand appropriate in light of new evidence because doing so would "serve the interest of allowing [the defendant] to cure its own potential mistake rather than needlessly wasting the Court's and the parties' resources"); and where the agency recognizes the merits of the plaintiff's challenges and is forthcoming about the challenges, *see Cal. Cmtys. Against Toxics v. United States EPA,* 688 F.3d 989, 992 (9th Cir.2012); *Citizens Against the Pellissippi Parkway Extension, Inc. v. Mineta,* 375 F.3d 412, 416 (6th Cir.2004) ("[W]hen an agency seeks a remand to take further action consistent with correct legal standards, courts should permit such a remand in the absence of apparent or clearly articulated countervailing reasons."). In reaching these conclusions, courts often rely on the principle of judicial economy, de-

ciding to preserve the court's scarce judicial resources by providing the federal defendants the opportunity to cure their own mistakes. *See Ethyl Corp.*, 989 F.2d at 523–24; *Salazar*, 734 F.Supp.2d at 134; *Sierra Club*, 560 F.Supp.2d at 24–25; *Citizens*, 375 F.3d at 416.

█ The situation in the instant case is analogous to the circumstances stated above. Here, the ARB relied on admittedly incorrect evidentiary allegations. Defendants seek to cure their mistake, however, and not waste judicial resources to review a decision with admitted deficiencies and errors. Defendants have been forthcoming about the merits of Plaintiff's challenges and admitted the alleged errors once they were discovered.

To be sure, not all of the cases relied on are directly on point. Some involve the propriety of reconsideration before an appeal was made to the federal court, *see Belville Mining*, 999 F.2d at 998–99; some involve evidence that was not available at the time of the initial decision, *see Ethyl Corp.*, 989 F.2d at 523; some involve legal defects, *see Citizens*, 375 F.3d at 416; and some involve procedural errors, *see California Cmtys.*, 688 F.3d at 992. But the themes running throughout are analogous to the instant case.

In the instant case, the evidence, while not new, does not appear to have been considered by the ARB initially for a variety of reasons. Defendants did not stall in recognizing the merits of Plaintiff's challenges. To the contrary, Defendants recognized and admitted a deficiency in the findings. To date, there has been no evidence of a pattern of legal tactics to avoid judicial review on Defendants' part. At bottom, nothing suggests Defendants' remand request has been made in bad faith.

Plaintiff also suggests that judicial economy will not be served because, after any sort of reconsideration, the parties will find themselves in this same spot. *See* Dkt. No. 76 at 19–20. But, as Defendants point out, even if Plaintiff prevails on summary judgment, it is likely the case would be remanded. *See O'Reilly v. U.S. Army Corps of Eng'rs*, 477 F.3d 225, 238–39 (5th Cir.2007) ("As a general rule, when 'an agency decision is not sustainable on the basis of the administrative record, then 'the matter should be remanded to [the agency] for further consideration.' ' Only in 'rare circumstances' is remand for agency reconsideration not the appropriate solution." (citations omitted)). This is true even taking into consideration Plaintiff's constitutional and other claims. As discussed more fully below, certain doctrines, such as ripeness, dictate that a proper agency reconsideration should be complete before taking up any constitutional analysis.

In light of all of the above circumstances, the undersigned can see no reason not to remand the case so long as an unreasonable time has not passed.

### 2. *Remand Was Sought Within a Reasonable Time Frame.*

Once again, there is no hard and fast rule regarding what constitutes "reasonable time" with respect to voluntary remand. Some courts merely state the rule—that the review must occur in a reasonable time frame—while others state that the time period must be measured in "weeks, not years." *See Macktal*, 286 F.3d at 826 ("Reconsideration must … occur within a reasonable time after the first decision. . . ."); *Belville Mining*, 999 F.2d at 1000 (" '[a]bsent unusual circumstances, the time period would be measured in weeks, not years.' ").

When examining the practical implications, however, it becomes clear that apparently no true rules exist. Of course, in

those instances in which many years have passed, the courts will find that a reconsideration is not timely, see Gabbs Exploration Co. v. Udall, 315 F.2d 37, 41 (D.C.Cir. 1963) (27 years unreasonable); Umpleby v. Udall, 285 F.Supp. 25, 28 (D.Colo.1968) (20 years unreasonable); Aubre v. United States, 40 Fed.Cl. 371, 376–77 (1998) (6 and 14 years unreasonable), and, when only a few days, up to one month, have passed, reconsideration is timely, see Klein v. Peterson, Civ. A. No. 87–2661, 1988 WL 36331, at *1 (D.D.C. Mar. 31, 1988) (three days reasonable); Macktal, 286 F.3d at 826 (approximately thirty-day period reasonable).

The time periods in between, however, are much less clear. Courts have tried to create factors to examine when determining whether an agency reconsideration request was timely, including the following: (1) the complexity of the decision; (2) whether the decision was factually or legally based; (3) whether the agency acted according to its general procedures for review; (4) whether the express time limit for appeals set forth in the regulations had run; (5) whether legally cognizable property interests had arisen through the initial decision; (6) whether the plaintiff had acted in reliance on the initial decision; (7) whether the agency had attempted to use a pretext to justify reconsideration; and (8) the probable impact of an erroneous agency decision absent reconsideration. See Belville Mining, 999 F.2d at 1001. But, a review of cases addressing the issue reveals that, even considering these factors, a reasonable time has no real limits. Federal courts have rejected periods of five months, Rosebud Sioux Tribe v. Gover, 104 F.Supp.2d 1194, 1202 (D.S.D.2000), rev'd on other grounds sub nom. Rosebud Sioux Tribe v. McDivitt, 286 F.3d 1031 (8th Cir.2002), and nine months, see Prieto v. United States, 655 F.Supp. 1187, 1192 (D.D.C.1987), as unreasonable, yet upheld eight months, see Belville Mining, 999 F.2d at 1001–02, as reasonable. Oddly, two years has been held to be both reasonable, see Crager v. United States, 25 Cl.Ct. 400, 403–04, 411 (1992), and unreasonable, see Gratehouse v. United States, 512 F.2d 1104, 1110 (Ct.Cl.1975). And, while one year, see C.J. Langenfelder & Son, Inc. v. United States, 341 F.2d 600, 604 (Ct.Cl. 1965) and three years, see Cabo Distrib. Co. v. Brady, 821 F.Supp. 601, 613 (N.D.Cal.1992), have been held unreasonable, four-and-a-half years, see Elkem Metals Co. v. United States, 193 F.Supp.2d 1314, 1322–23 (Ct.Int'l Trade .2002), has been deemed acceptable.

The only guideline to be gleaned from the cases is that courts analyze the facts of each case in an effort to reach an equitable outcome.

■ Here, the Court finds the amount of time that has passed—20 months (not quite two years)—to be reasonable, in light of the circumstances of the instant case and the factors referenced in Belville Mining. Once Defendants became aware of the error, they moved to remand the case. See Macktal, 286 F.3d at 826 (taking into account the fact that the agency acted promptly once it became of aware of its decision to reconsider and gave notice to the parties). Thus, while the period of time that elapsed between the ARB's findings and now is substantial, it is not unreasonable. See. Elkem Metals Co., 193 F.Supp.2d at 1322–23. Moreover, there has been no indication that Defendants failed, or delayed, to inform Plaintiff of the potential error, or their intention to seek remand, once it became known to them. See Dkt. No. 61.

Plaintiff argues that, because the "ARB has 'adopted principles employed by federal courts under Rule 40 of the Federal Rules of Appellate Procedure and Rules 59

and 60 of the Federal Rules of Civil,' " the time for voluntary remand and reconsideration has passed. *See* Dkt. No. 76 at 17–18. But, as demonstrated by the case law above, and by the fact that these rules have different deadlines, these are guiding principles and not hard and fast rules. Rather, the rule is what is reasonable, which depends on the circumstances of each case.

### 3. *Vacatur is Not Appropriate Under the Circumstances.*

■ Plaintiff requests that the Final Order be set aside. The undersigned concludes that Defendant's Motion for Voluntary Remand should be granted, without addressing the merits of the Final Order. Without a finding that the Final Order is arbitrary and capricious, or otherwise unlawful, a ruling vacating or setting aside the Final Order is premature. Indeed, "this Court is not persuaded that it has the authority to order vacatur of the [Final Order] without an independent determination that [Defendants'] action was not in accordance with the law." *Salazar*, 734 F.Supp.2d at 135 (citing 5 U.S.C. § 706(2) (directing a reviewing court to hold unlawful and set aside agency action, findings, and conclusions that it finds to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law)). And the undersigned is persuaded that, because Defendants concede that the foundation of the Final Order must be reexamined, the Court should not consider how it would rule if the record that was before the ARB were different from what it actually was.

Vacatur is rarely mentioned in cases granting a motion for voluntary remand. *See, e.g., SKF*, 254 F.3d at 1030; *Ethyl Corp.*, 989 F.2d at 524. The courts in those cases may, however, remand with instructions and restrictions on what the reviewing body is to reconsider. *See, e.g., SKF*, 254 F.3d at 1030; *Ethyl Corp.*, 989 F.2d at 524.

The undersigned finds those cases on voluntary remand, without vacatur, instructive. The undersigned recommends that the Court remand the case for the limited purpose of examining the alleged error related to the allegation that the "disparity in the hiring rates of females as compared to males that was statistically significant at 3.26 standard deviations." *See* Dkt. No. 17–5 at 101. The ARB relied on that allegation in deciding to order Plaintiff to produce the contested information, and the parties agree that the allegation, as stated, is incorrect. The Court should order that, on remand, the reviewing board is only to reconsider this allegation and surrounding facts.

Plaintiff also argues that any finding on remand would be arbitrary and capricious as a matter of law because a raw data analysis can never support a finding of discrimination. *See* Dkt. No. 76 at 23. Such a finding would be premature. The Final Order related only to whether additional discovery was permissible. It is based on this evidence that the agency will make an ultimate finding regarding discrimination. At that point, the finding of discrimination—if one is made—would be open for attack if it is not supported by substantial evidence, including the raw data analysis.

As for Plaintiff's arguments that any attempts to reopen the record are inappropriate, there is nothing to indicate that 41 C.F.R. § 60–30.29 operates to close the record when a remand for reconsideration of part of the record has been ordered. And the undersigned cannot fathom that such an outcome was intended.

For all of the above reasons, the undersigned concludes that the Final Order should not be set aside or vacated at this

juncture. But, as the parties agreed during the December 18, 2013 telephone status conference, the Court will lose jurisdiction over this matter when the remand is ordered, and the case should then be closed.

### 4. Remand is not Premature.

■ Plaintiff also argues that remand would be premature because Plaintiff raised a "constitutional challenge to the authority of the DOL to create an administrative trial system that adjudicates claims against government contractors and awards injunctive and other relief." Dkt. No. 76 at 25. Plaintiff contends that, because these claims are pending before the Court, any remand that invokes the "challenged scheme" would be premature and inappropriate. See id. at 26. The undersigned does not agree.

As an initial matter, to the extent that the constitutional claims alleged by Plaintiff relate to the ARB's reliance on the error, see Dkt. No. 32 at 29, which is the subject of remand, any such claims will be mooted by the remand.

In support of its argument, Plaintiff points only to Defendants' Reply Brief filed in support of their Motion to Dismiss, contending that Defendants failed to explain how the procedure was not unconstitutional. See Dkt. No. 76 at 26–29. Unacknowledged by Plaintiff, however, is the issue of ripeness and its effect on Plaintiff's claims.

■ In light of the remand that the undersigned recommends, any claims that the procedure undertaken by OFCCP and the DOL was unconstitutional will not yet be ripe. "The ripeness doctrine is drawn both from Article III limitations on judicial power and from discretionary policies against deciding hypothetical cases." Ash Creek Mining Co. v. Lujan, 934 F.2d 240, 243 (10th Cir.1991). A basic purpose of the doctrine " 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' " See id. (quoting Pacific Gas & Elec. Co. v. Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 200, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (quoting Abbott Laboratories v. Gardner, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967))). Thus, before a court may review an agency decision, it must evaluate "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." See id. (citations omitted). An issue is fit for judicial review if the agency rule is final and not dependent on future uncertainties. See Traficanti v. United States, 227 F.3d 170, 176 n. 2 (4th Cir.2000).

Here, the agency ruling is not yet final insofar as it is remanded for reconsideration of a limited portion of the Final Order. Moreover, future uncertainties exist because there is no guarantee what OFCCP and the DOL's decisions will ultimately be. Defendants could decide not to pursue their investigation on remand. When the administrative agency has not completed its review, it is prudent to wait until the review is complete to avoid piecemeal appeals. See Tex. Office of Pub. Util. Counsel v. FCC, 183 F.3d 393, 430 (5th Cir. 1999).

Considering this case law, the undersigned concludes that Plaintiff's constitutional challenge is unripe for judicial review because, in light of the recommended remand, Plaintiff cannot prove that the ruling is final and not dependent on future

uncertainties. In light of the above, the Court should dismiss Plaintiff's remaining claims without prejudice to them being refiled, if appropriate, at a later date.

### Recommendation

For the reasons stated herein, the Defendants' Motion for Voluntary Remand [Dkt. No. 71] should be granted, and the Final Order should be remanded for reconsideration in accordance with these findings, conclusions, and recommendation. Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment [Dkt. No. 42] and Plaintiff's Motion for Summary Judgment on Count Seven: the Final Order is not Supported by Substantial Evidence [Dkt. No. 58] should be denied without prejudice in light of the administrative remand, Plaintiff's claims should be dismissed without prejudice, and the case should be closed.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Doug-*

*lass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir.1996).