**ETHYL CORPORATION, Petitioner,**

v.

**Carol M. BROWNER, Administrator, U.S. Environmental Protection Agency and U.S. Environmental Protection Agency, Respondents.**

**No. 92–1064.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 8, 1993.

Decided April 6, 1993.

F. William Brownell, with whom John J. Adams, and Kevin L. Fast, Washington, DC, were on the brief, for petitioner.

John C. Nagle, Atty., Dept. of Justice, with whom Raymond Ludwiszewski, Acting Gen. Counsel, Alan W. Eckert, Associate Gen. Counsel, Nancy Ketcham–Colwill, Asst. Gen. Counsel, and Timothy D. Backstrom, Counsel, U.S. E.P.A., Washington, DC, were on the brief, for respondents.

Before: SILBERMAN, WILLIAMS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Ethyl Corporation seeks review of the Environmental Protection Agency's denial of Ethyl's application for a waiver for a fuel additive, MMT,[1] a manganese-based additive designed to prevent auto engine knocking. See § 211(f)(4) of the Clean Air Act, 42 U.S.C. § 7545(f)(4). The Administrator acknowledges that evidence developed since denial of the waiver has undermined the stated basis for denial, and asks that we remand the matter to the Agency for further consideration, including review of other possible bases for denial that the Agency alluded to but did not resolve in its explanation of the original denial. Ethyl resists the remand, arguing that we must decide whether the denial was erroneously issued, because (it says) the statutory scheme entitles it to receive the waiver if the denial was in error. Because we conclude that illegality at the time of denial would *not* entitle Ethyl to that remedy, we think it inappropriate to review the now stranded decision, and we remand the case to the Administrator.

Section 211(f)(1) of the Clean Air Act prohibits the sale of fuels and fuel additives that are not "substantially similar" to those in use in vehicles or engines certified since 1974. 42 U.S.C. § 7545(f)(1). Section 211(f)(4), however, provides that upon application by a manufacturer, the Administrator may waive the prohibition of § 211(f)(1) if he determines that the applicant has established that its additive will not "cause or contribute" to the failure of vehicles to comply with the emission standards to which they have been certified. In the interests of assuring timely action by the EPA, the same section provides a sanction for failure to act within 180 days:

> If the Administrator has not acted to grant or deny an application under this paragraph within [180] days of receipt of such application, the waiver authorized by this paragraph shall be treated as granted.

42 U.S.C. § 7545(f)(4).

Ethyl applied on July 12, 1991 for a § 211(f)(4) waiver to permit the addition of MMT to unleaded gasoline.[2] The Administrator denied the application on January 8, 1992, within the 180–day statutory period, solely because test data submitted by the Ford Motor Co. indicated that "factors other than those taken into account in Ethyl's test program"—particularly, the "driving cycle," or speed at which the vehicle is typically driven—"may significantly and adversely influence the magnitude of the emissions increase caused by the addition of [MMT] to unleaded gasoline." 57 Fed. Reg. 2535, 2535, 2541 (Jan. 22, 1992). Because the Administrator regarded the Ford data as sufficient grounds for denying the application, he declined to reach several other issues, such as the effect of MMT on public health, which might otherwise have affected his decision. *Id.*

Ethyl petitioned this court for review of the Administrator's decision, claiming that the Administrator's reliance on the Ford data was arbitrary, capricious, and inconsistent with the purposes underlying the Clean Air Act. Soon thereafter the EPA began settlement discussions with Ethyl. In the course of these discussions Ethyl provided EPA with the results of tests completed since the original decision. Because Ethyl's tests undermined the view

---

1. MMT stands for methylcylopentadienal manganese tricarbonyl.

2. This was Ethyl's fourth such application. The first two were denied, and the third was withdrawn.

that the driving cycle altered the effect of MMT on emissions, the Administrator moved this court for a remand of the administrative record to allow the agency to consider the new evidence and make a new decision. We commonly grant such motions, preferring to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete.[3] Ethyl opposed the motion, arguing that erroneous denial of a waiver was a nullity, thus calling into play the provision for automatic issuance of a waiver where the EPA fails to act within 180 days. We deferred action on the EPA motion until oral argument so as to decide the matter with a better understanding of the context and of Ethyl's theory.

Ethyl derives its remedial argument from § 211(f)(4)'s provision that if the Administrator "has not acted to grant or deny an application" within 180 days of receipt, the waiver "shall be treated as granted." Thus it equates unlawful denial with inaction. In assessing this claim, we hasten to note that its acceptance would not leave the country unalterably exposed to harmful additives, for § 211(c) empowers the EPA to ban the use of any additive found to cause health problems or to impair the operation of an emissions control device.[4]

The statute does not compel Ethyl's result. It says that the agency must act with speed to stave off an involuntary waiver grant, not that it must act with perfection. Ethyl, to support its proposed extension of the statutory language, points to *Ameri-*

*can Methyl Corp. v. EPA*, 749 F.2d 826 (D.C.Cir.1984). But there we held only that when the EPA has *granted* a waiver, and has then come to believe the grant mistaken, it may revoke the waiver only by means of the procedure set out in § 211(c). The case does not address the issue of mistaken *denials*, nor does its logic support Ethyl's interpretation of the 180–day time limit. Indeed, the only link between this case and *American Methyl* is that both deal with the question of remedying an agency mistake; but as *American Methyl* dealt with the effect of a remedy explicitly provided by Congress for erroneous grant of a waiver (§ 211(c)), it has no direct application here.

We do not see that the policy of § 211(f)(4)'s automatic issuance provision naturally extends to mistaken denials. Automatic issuance is itself a dramatic, even extreme, penalty for agency delay; given the tradition of allowing agencies to reconsider their actions where events pending appeal draw their decision in question, we see no basis to extend Congress's remedy for delay into a similarly radical remedy for error.

Accordingly, we remand the case to the EPA to redetermine within 180 days whether to grant or deny Ethyl's § 211(f)(4) application.

*So ordered.*

---

3. See, e.g., *Lamprecht v. FCC*, 958 F.2d 382, 385 (D.C.Cir.1992) (after court voted to rehear the case *en banc*, court granted FCC's motion to remand the case for reconsideration before briefing or oral argument when FCC admitted that its decision was erroneous and contrary to law); *Wilkett v. ICC*, 710 F.2d 861, 863 (D.C.Cir. 1983) (noting that court had granted Commission's pre-oral argument motion to remand the case for the purpose of reconsideration); *Anchor Line Ltd. v. Federal Maritime Comm'n*, 299 F.2d 124, 125 (D.C.Cir.1962) ("when an agency seeks to reconsider its action, it should move the court to remand or to hold the case in abeyance pending reconsideration by the agency"); *WKAT v. FCC*, 258 F.2d 418, 419 (D.C.Cir.

1958) (granting FCC's pre-oral argument motion to remand the case when FCC alleged that one of the participating Commissioners should have disqualified himself).

4. Section 211(c) provides in pertinent part:

The Administrator may, from time to time on the basis of information ... available to him, by regulation, control or prohibit the manufacture ... or sale of any fuel or fuel additive ... if in the judgment of the Administrator any emission product of such fuel or fuel additive causes health problems or impairs the operation of any emissions control device. 42 U.S.C. § 7545(c)(1).