**CITY OF PEMBROKE PINES, Plaintiff,**

v.

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, Defendant.**

**CASE NO. 15–61164–CIV–ALTONAGA**

United States District Court,
S.D. Florida.

Signed October 19, 2015

E. Bruce Johnson, Hudson C. Gill, Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A., Fort Lauderdale, FL, for Plaintiff.

Anthony Erickson–Pogorzelski, Assistant U.S. Attorney, Miami, FL, for Defendant.

## ORDER

CECILIA M. ALTONAGA, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** came before the Court on Defendant, U.S. Immigration and Customs Enforcement's ("ICE['s]") Motion for Remand ("Motion") [ECF No. 20], filed September 18, 2015. On October 5, 2015, Plaintiff, City of Pembroke Pines ("Pembroke Pines") filed a Response ... ("Re-sponse") [ECF No. 21], to which ICE filed a Reply ... ("Reply") [ECF No. 23]. The Court has carefully considered the parties' written submissions, the Complaint [ECF No. 1], the record, and applicable law.

According to the Complaint, Pembroke Pines commenced this case after it was unable to obtain the depositions of three ICE employees in an underlying state-court case. (*See generally* Compl.). In the state-court case, the Town of Southwest Ranches ("Southwest Ranches") brought claims against its neighbor, Pembroke Pines, arising out of a transaction that never came to fruition. (*See generally id.*). The transaction contemplated the construction of an ICE detention facility in Southwest Ranches, and the parties to the transaction requested the provision of water and wastewater services from Pembroke Pines. (*See id.* ¶¶ 5–13). As of the time the Complaint in this suit was filed, however, Pembroke Pines still had not given its approval for those services. (*See id.* ¶ 14). In the meantime, ICE decided it no longer intended to proceed with the transaction. (*See id.* ¶¶ 15–16). Southwest Ranches therefore sued Pembroke Pines in October 2012, alleging Pembroke Pines's failure to give approval for water and wastewater services derailed the deal, thereby violating Southwest Ranches's rights under two inter-local agreements. (*See id.* ¶ 18).

To defend against the claims, Pembroke Pines sought information from ICE regarding its decision to withdraw from the deal. Although ICE withdrew in June 2012 by issuing a statement (*see id.* ¶ 15), in February 2013, ICE, acting through its former Executive Associate Director, Gary Mead, also sent a letter to Southwest Ranches in which it stated, "[b]ased on several considerations, ICE decided it

would not pursue its facility in" Southwest Ranches (*id.* ¶ 16 (alteration in original)). On March 13, 2013, Pembroke Pines submitted a Freedom of Information Act request to ICE seeking information relating to the "several considerations" identified by Gary Mead in the February 2013 letter. (*See id.* ¶ 21). ICE responded four days later, stating it was unable to locate or identify any responsive records. (*See id.* ¶ 22).

The following month, Pembroke Pines submitted a formal request for testimony from Gary Mead. (*See id.* ¶ 23). ICE denied the request. (*See id.* ¶ 25). According to Pembroke Pines, the "boilerplate ... correspondence provided no explanation for ICE's denial beyond a formulaic citation to the relevant factors." (*Id.* (alteration added)). In March 2014, Pembroke Pines filed a second formal request, this time seeking the testimony of ICE employees Marc Moore and Michael Meade in addition to Gary Mead. (*See id.* ¶ 27). ICE denied this request as well, providing, as Pembroke Pines sees it, yet another "boilerplate response which contained no legitimate analysis of the relevant factors." (*Id.* ¶ 28).

Over a year later, Pembroke Pines filed the Complaint in this case, seeking judicial review of ICE's denials on the grounds the agency's actions were arbitrary, capricious, and an abuse of discretion, as well as contrary to constitutional right, power, privilege, or immunity, in violation of the Administrative Procedure Act ("APA"), specifically 5 U.S.C. section 706(2)(A).

(*See* Compl. Count I).[1] Pembroke Pines sought an order (a) setting aside ICE's decisions, and (b) ordering ICE to produce Gary Mead, Michael Meade, and Marc Moore for depositions. (*See id.* Prayer for Relief).

ICE filed an Answer ... [ECF No. 12]. At a telephonic conference [ECF No. 18] on August 21, 2015, ICE agreed to file the administrative record regarding the denials within a month and, if Pembroke Pines did not dispute the completeness of the administrative record, file a motion for summary judgment, as no discovery would be needed. (*See* Order [ECF No. 19] ). Instead of filing the administrative record when the time came to do so, ICE filed the instant Motion, seeking an order remanding this matter to ICE "for reconsideration and development of the administrative record." (Mot.1).

ICE explains "Joseph A. Macri, the signatory on the denial letters and the original ICE decision maker, is no longer an ICE employee and no longer recalls the specific basis for his decisions made in 2013 and early 2014. ICE, therefore, is unable to supplement the administrative record." (*Id.*). Upon remand, ICE states it will "reconsider the request and issue a new decision with a full and complete administrative record." (*Id.* 1–2). Pembroke Pines takes the Motion as ICE's concession (a) its decision was arbitrary and capricious and (b) no administrative record exists to support its decision. (*See* Resp. 1). For these reasons, as well as the purported "reasonableness of [its] initial request," Pembroke Pines argues the

---

1. Southwest Ranches brought a similar suit against ICE in the related case *Town of Southwest Ranches v. U.S. Department of Homeland Security, Immigration & Customs Enforcement,* Case No. 15–21924–CIV–GAYLES. Per the parties' agreement, the case was stayed until November 12, 2015 to allow ICE time to reconsider its decision and develop a new administrative record. (*See id.* [ECF Nos. 12–13] ).

Motion should be denied and "ICE should be required to defend its decision as it stands now." (*Id.* (alteration added)).

In the Reply, ICE clarifies it "seeks voluntary remand because it is unable to verify what was considered in rendering its initial decision ... [and] is unable to verify a complete and accurate administrative record." (Reply 1 (alterations added)). Further, ICE avers it did in fact rely on an administrative record, but it did not compile and maintain the record as a formal record because it was unaware at the time of its decision litigation would ensue. (*See id.* 1–2 n.1). ICE also asserts it does not concede its actions violated section 706(2)(A). (*See id.* 3–4).

■ In *United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), the U.S. Supreme Court upheld regulations allowing a federal agency to restrict its employees from testifying about information acquired in their official capacities in private litigation as to which the United States is not a party. "Similar regulations are commonplace among other federal agencies, and have been upheld by the federal courts." *Moore v. Armour Pharm. Co.,* 927 F.2d 1194, 1197 (11th Cir.1991) (citations omitted). These regulations are commonly known as *Touhy* regulations, and requests implicating the regulations are known as *Touhy* requests.

■ ICE is subject to the *Touhy* regulations promulgated by the U.S. Department of Homeland Security, codified at 6 C.F.R. sections 5.41–49. ICE explains when it "receives a *Touhy* request, the request is processed internally and assigned to an agency attorney for consideration in accordance with the governing agency *Touhy* regulations and factors." (Mot. 5 n.1). Additionally, "[w]hen a *Touhy*

request is made and evaluated, an administrative record is not created simultaneously. Rather, the *Touhy* request is handled informally by the agency (*i.e.,* without a hearing or formal proceeding generating a record)." (*Id.* 5 (alteration added)). Thus, ICE typically compiles an administrative record only after the filing of a federal APA lawsuit challenging the denial of a *Touhy* request. (*Id.* (citations omitted)). "There is, of course, nothing wrong with an agency compiling and organizing the complete administrative record after litigation has begun from all the files of agency staff involved in the agency action, as long as that record only contains documents considered by the staff prior to the agency action." *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs,* 87 F.3d 1242, 1246 n. 2 (11th Cir. 1996).

■ An agency's denial of a *Touhy* request is subject to review under section 706(2)(A), including when the request relates to an underlying state-court action to which the United States is not a party. *See Moore,* 927 F.2d at 1197; *Westchester Gen. Hosp., Inc. v. Dep't of Health & Human Servs.,* 443 Fed.Appx. 407, 410 (11th Cir.2011); *Hous. Bus. Journal, Inc. v. Office of the Comptroller of the Currency, U.S. Dep't of the Treasury,* 86 F.3d 1208, 1212 (D.C.Cir.1996) (citations omitted). "The focal point for judicial review ... should be the administrative record," *Preserve Endangered Areas of Cobb's History,* 87 F.3d at 1246 (alteration added; citation omitted), and the standard the court applies is "exceedingly deferential," *Westchester Gen. Hosp.,* 443 Fed.Appx. at 410 (quoting *Fund for Animals, Inc. v. Rice,* 85 F.3d 535, 541 (11th Cir.1996)).

■ "If the record before the agency does not support the agency action, if the

agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). The Eleventh Circuit has "found the existence of rare circumstances and decided an issue in the first instance only when 'the undecided issue [was] legal, not factual.'" *Stone & Webster Constr., Inc. v. U.S. Dep't of Labor,* 684 F.3d 1127, 1137 (11th Cir.2012) (quoting *Calle v. U.S. Att'y Gen.,* 504 F.3d 1324, 1330 (11th Cir.2007)) (alteration in original).

▇ This weighty preference for remand extends to a procedural posture in which the agency voluntarily requests remand before the Court or the parties reach the merits of the dispute. Given an agency's "inherent authority ... to reconsider a prior decision," "when an agency seeks a remand to take further action consistent with correct legal standards, courts should permit such a remand in the absence of apparent or clearly articulated countervailing reasons." *Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta,* 375 F.3d 412, 416 (6th Cir.2004) (alteration added); *see also SKF USA Inc. v. United States,* 254 F.3d 1022, 1028–29 (Fed.Cir.2001); *Ethyl Corp. v. Browner,* 989 F.2d 522, 524 & n. 3 (D.C.Cir.1993).

▇ Pembroke Pines offers no justification for overriding the default rule requiring remand. As is apparent in light of the foregoing discussion, the argument ICE concedes its denials were arbitrary and capricious (*see* Resp. 1–2) misconstrues the facts, as does the argument ICE failed to make any administrative record at all (*see id.* 4–5). Likewise unavailing is Pembroke Pines's argument (*see* Resp. 2–3) this case presents one of the "rare circumstances" in which "'the undecided issue [is] legal, not factual.'" *Stone & Webster Constr., Inc.,* 684 F.3d at 1137 (quoting *Calle,* 504 F.3d at 1330) (alteration added). The factors ICE did or did not consider in making its decisions are issues of fact the parties do indeed dispute. *See Stone & Webster Constr., Inc.,* 684 F.3d at 1137.

The Court also rejects Pembroke Pines's argument granting remand would result in a greater waste of resources than would denying remand. (*See* Resp. 3–4). First, the argument Pembroke Pines knows better than ICE what would be a waste of ICE's resources (*see id.*) fails to persuade for obvious reasons. Second, Pembroke Pines's pessimistic prediction ICE will deny its requests again upon reconsideration (*see id.* 4 n.1) is speculation that provides no legally cognizable basis for denying the Motion.

Third, the argument remand would be inefficient for both Pembroke Pines and the Court is also speculative. (*See id.* 4). Remand could end up taking up more resources for all parties involved, but it could also result in Pembroke Pines's requests being granted. The Court is in no position to tell; neither are the parties. At a minimum, for the foreseeable future, ICE will be reconsidering its decision, and Pembroke Pines and the Court presumably will not be involved. By contrast, if the Court denies remand, Pembroke Pines will expend attorney's fees briefing summary judgment motions, and the Court will then spend its time reviewing those motions. Critically, Pembroke Pines also fails to appreciate the significant possibility that, if the Court refuses to remand this case,

instead proceeds to decide it on summary judgment, and then finds in favor of Pembroke Pines, the Court nevertheless would be compelled to remand the matter to ICE. *See Lorion*, 470 U.S. at 744, 105 S.Ct. 1598.

Perhaps this case will come back; perhaps it will not. At this juncture, ICE is entitled to the remand it seeks. It is therefore

**ORDERED AND ADJUDGED** that the Motion [ECF No. 20] is **GRANTED.** This matter is **REMANDED** to Defendant, U.S. Immigration and Customs Enforcement. The Clerk is directed to **CLOSE** this case, and any pending motions are **DENIED as moot.**

**DONE AND ORDERED** in Miami, Florida, this 19th day of October, 2015.