RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0027p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

SIERRA CLUB; OHIO ENVIRONMENTAL COUNCIL;
DONNA BALLINGER; MARILYN WALL,

*Petitioners*,

v.

No. 21-3057

UNITED STATES ENVIRONMENTAL PROTECTION
AGENCY; MICHAEL S. REGAN, Administrator, U.S.
Environmental Protection Agency,

*Respondents*,

STATE OF OHIO,

*Intervenor*.

On Petition for Review from an Order of the
United States Environmental Protection Agency;
No. EPA-R05-OAR-2020-055.

Argued: October 19, 2022

Decided and Filed: February 10, 2023

Before: GRIFFIN, GIBBONS, and STRANCH, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** D. David Altman, ALTMANNEWMAN CO. LPA, Cincinnati, Ohio, for Petitioners
Wall and Ballinger. Megan Wachspress, SIERRA CLUB, Oakland, California, for Petitioners
Sierra Club and Ohio Environmental Council. Elliot Higgins, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent United States Environmental
Protection Agency. Samuel C. Peterson, OFFICE OF THE OHIO ATTORNEY GENERAL,
Columbus, Ohio, for Intervenor. **ON BRIEF:** D. David Altman, Justin D. Newman, Amy J.
Leonard, ALTMANNEWMAN CO. LPA, Cincinnati, Ohio, Megan Wachspress, SIERRA

CLUB, Oakland, California, for Petitioners. Elliot Higgins, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent United States Environmental Protection Agency. Samuel C. Peterson, Benjamin M. Flowers, Aaron Farmer, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Intervenor. Eric B. Gallon, Robert L. Brubaker, PORTER, WRIGHT, MORRIS & ARTHUR LLP, Columbus, Ohio, Christine Rideout Schirra, Frank L. Merrill, BRICKLER & ECKLER LLP, Columbus, Ohio, for Amici Curiae.

_____

**OPINION**

_____

JANE B. STRANCH, Circuit Judge. This case arises under the provisions of the Clean Air Act that give the Environmental Protection Agency (EPA) the authority to establish national ambient air quality standards (NAAQS) for certain pollutants. To achieve, maintain, and enforce those standards, every state is required to develop a plan known as a State Implementation Plan (SIP), which the EPA reviews and, after public notice and comment, either approves or disapproves. Upon approval, a SIP—and all the state regulations it includes—becomes enforceable in federal court. If the EPA determines that its prior approval of a SIP was in error, the EPA can revise the plan using the Clean Air Act's error-correction provision, 42 U.S.C. § 7410(k)(6).

For almost fifty years, Ohio's SIP included an air nuisance rule (ANR) that made unlawful the emission of various substances in a manner or amount that endangered public health, safety, or welfare, or caused unreasonable injury or damage to property. In March of 2020, the EPA proposed removing the ANR from Ohio's SIP using the Clean Air Act's error-correction provision. After receiving public comment, the EPA ultimately finalized the removal of the ANR from Ohio's SIP on the grounds that the state had not relied on the rule to implement, maintain, or enforce any NAAQS. The Sierra Club, Ohio Environmental Council, Donna Ballinger, and Marilyn Wall (collectively, Petitioners) timely petitioned for review of the removal of the air nuisance rule, arguing that the EPA improperly invoked 42 U.S.C. § 7410(k)(6) and acted arbitrarily and capriciously in removing the ANR from Ohio's SIP. We grant the petition, holding that Petitioners have standing to challenge the EPA's removal of the ANR from Ohio's SIP, and remand the removal without vacatur so that the Agency may review its action further.

## I. BACKGROUND

### A. The Clean Air Act, NAAQS, and SIPs

Congress enacted the Clean Air Act (the CAA, or the Act) to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). One of the Act's "primary goal[s]" is to "encourage or otherwise promote reasonable . . . State[] and local governmental actions . . . for pollution prevention." *Id.* § 7401(c). To this end, the CAA requires the EPA to establish and periodically revise national ambient air quality standards, or NAAQS, for certain pollutants to "establish maximum permissible concentrations of those pollutants in the outside or 'ambient' air." *Ky. Res. Council, Inc. v. EPA*, 467 F.3d 986, 987 (6th Cir. 2006) (citing 42 U.S.C. §§ 7408, 7409). The EPA has set NAAQS for six "criteria pollutants": ozone, particulate matter, carbon monoxide, lead, sulfur dioxide, and nitrogen dioxide. *See* 40 C.F.R. §§ 50.4-50.19.

Each state has "the primary responsibility" for ensuring that its ambient air meets the NAAQS for the identified pollutants. 42 U.S.C. § 7407(a). As part of this responsibility, states are required to develop SIPs that "include enforceable emission limitations and other control measures, means, or techniques" to provide for the implementation, maintenance, and enforcement of NAAQS and "as may be necessary or appropriate to meet the applicable requirements of" the Act. 42 U.S.C. § 7410(a)(1), (a)(2)(A). States must then submit their SIPs for the EPA's approval. *Id.* § 7410(a)(1). Upon EPA approval, the SIP and its component laws and regulations become enforceable in federal court by the state itself, the EPA, or members of the public via the CAA's citizen-suit provision. *Id.* § 7604; *Ky. Res. Council, Inc.*, 467 F.3d at 988. "[T]he provisions of the particular state's SIP determine what conduct is actionable under the CAA." *Nat'l Parks Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 480 F.3d 410, 418 (6th Cir. 2007).

The Act permits SIPs to be revised in a few ways. If a state wishes to modify its SIP, it must submit any proposed revisions for approval so the EPA can ensure the revision will not interfere with "any applicable requirement concerning attainment and reasonable further

progress." 42 U.S.C. §§ 7410(*l*), 7501(1); 40 C.F.R. § 51.105. Or, if the EPA finds that a SIP is "substantially inadequate" to attain or maintain a given NAAQS or to otherwise comply with the Act, the EPA can require the state to revise the plan to correct its inadequacies. 42 U.S.C. § 7410(k)(5). This process is known as a "SIP call." *Sw. Pa. Growth All. v. Browner*, 144 F.3d 984, 986 (6th Cir. 1998).

Under certain circumstances, the EPA can also revise a state's SIP using the CAA's error-correction provision, 42 U.S.C. § 7410(k)(6). If the EPA determines that its prior approval of a SIP "was in error," the EPA may, "in the same manner" as its prior approval, revise the SIP "as appropriate without requiring any further submission from the State." 42 U.S.C. § 7410(k)(6). The claimed error can be used to revise a SIP only if the error existed at the time of the SIP's prior approval. *See Ala. Env't Council v. EPA*, 711 F.3d 1277, 1287-88 (11th Cir. 2013); *Texas v. EPA*, 726 F.3d 180, 204 (D.C. Cir. 2013) (Kavanaugh, J., dissenting) ("Section [74]10(k)(6) can be used to retroactively disapprove a SIP only if the SIP was out of compliance with the Act or EPA regulations when the SIP was originally approved."). The EPA must provide the basis for its determination to the state and public. 42 U.S.C. § 7410(k)(6).

## B. Ohio's Air Nuisance Rule and SIP

Ohio's ANR prohibits the emission "of smoke, ashes, dust, dirt, grime, acids, fumes, gases, vapors, or any other substances or combinations of substances, in such manner or in such amounts as to endanger the health, safety or welfare of the public, or cause unreasonable injury or damage to property[.]" Ohio Admin. Code 3745-15-07(A). It has been part of Ohio's SIP since the EPA first approved the SIP in 1974.[1] *See* 39 Fed. Reg. 13,539 (Apr. 15, 1974); 49 Fed. Reg. 32,181 (Aug. 13, 1984).

The ANR has been revised twice. In 1984, Ohio proposed and the EPA approved a revision "including an exemption for sources of odor which are not currently regulated under other portions of the SIP" and removing references to "comfort." 49 Fed. Reg. at 32,181. In

---

[1]Ohio's first SIP was initially approved in 1972, *see* 37 Fed. Reg. 10,842, 10,886-87 (May 31, 1972), which we vacated in *Buckeye Power, Inc. v. EPA*, 481 F.2d 162, 174 (6th Cir. 1973). After Ohio revised the plan, the EPA reapproved it in 1974.

2015, as part of a five-year state regulatory review process, Ohio made stylistic changes to the ANR to clarify the rule without changing its meaning.

Until the EPA removed the ANR from Ohio's SIP in 2020, parties authorized to enforce Ohio's SIP could and did bring CAA enforcement actions for violations of the ANR. *See City of Ashtabula v. Norfolk S. Corp.*, 633 F. Supp. 2d 519, 528-29 (N.D. Ohio 2009) (finding that plaintiff may bring an ANR claim under a CAA citizen suit); *Fisher v. Perma-Fix of Dayton, Inc.*, No. 3:04-CV-418, 2006 WL 212076, at *5 (S.D. Ohio Jan. 27, 2006) (same); *see also Sampson v. SunCoke Energy, Inc.*, No. 1:17-cv-00658 (S.D. Ohio); *Graff v. Haverhill N. Coke Co.*, No. 1:09-cv-00670 (S.D. Ohio).

Petitioners have also relied on the ANR apart from actually bringing CAA litigation. In 2014, Petitioner Sierra Club sent a notice of intent to sue under the CAA to a plant operator in Ohio, alleging that levels of sulfur dioxide near the plant exceeded the one-hour NAAQS for sulfur dioxide and therefore violated the ANR. Six years later, Sierra Club's modeling continued to show that sulfur dioxide levels near the plant exceeded levels considered safe by the EPA and continued to violate the ANR. Sierra Club then submitted that modeling as part of comments opposing the EPA's proposed redesignation of the county where the plant was located as having "attained" the one-hour sulfur dioxide NAAQS. At the time the EPA proposed removing the ANR from Ohio's SIP, Sierra Club was preparing CAA litigation to address the plant's ANR violation. And, in 2017 and 2018, Petitioners Sierra Club and Ballinger twice served notices of intent to file CAA citizen suits against a steel plant, alleging violations of the ANR. The first time, just before the 60-day notice period expired, the steel plant entered into a consent decree with the state of Ohio. The second time, regulators and the steel plant agreed to make modifications to the plant's operation.

## C. The EPA's Revision of Ohio's SIP

After its 1974 approval, the ANR was part of Ohio's SIP for almost fifty years, until November 2020, when the EPA removed it shortly after the Agency corresponded and met with a law firm representing an Ohio company.

On June 11, 2019, the law firm Perkins Coie wrote to the EPA regional administrator for the region encompassing Ohio to request that the Agency "correct an error" in Ohio's SIP and remove the ANR. The letter claimed that the ANR was not sufficiently related to the attainment and maintenance of NAAQS to merit inclusion in the SIP. Attorneys from the firm then met with the EPA's regional counsel and regional acting director on October 1, 2019, to discuss the firm's request. On October 18, Perkins Coie sent a second letter to the EPA's regional counsel and regional acting director, again arguing that the ANR had no connection with the purpose for which SIPs are developed and no reasonable connection with NAAQS, and that Ohio had not used the ANR as part of its NAAQS control strategy. Without further explanation, the letter urged the EPA to correct "an error that has had the unintended consequence of harming businesses in Ohio." At this time, the firm was also providing business advice and legal services to SunCoke Energy, a company operating a coke-making plant in Ohio, in connection with its securities offering. SunCoke Energy, Inc., *Form S-3 Registration Statement*, U.S. Sec. & Exchange Comm'n (Nov. 8, 2019).[2] A pending CAA citizen suit against SunCoke Energy claimed the company had violated the ANR. *See* ECF No. 1 (Complaint), *Sampson v. SunCoke Energy, Inc.*, No. 1:17-cv-00658 (S.D. Ohio).

In March 2020, the EPA proposed removing the ANR from Ohio's SIP. 85 Fed. Reg. 16,309 (Mar. 23, 2020). The EPA stated that it had "reviewed the docket files" regarding the ANR and found "no information" indicating that the state had relied or ever intended to rely on the rule for attainment or maintenance of any NAAQS. *Id.* at 16,309-10. The EPA referenced an email from an Ohio EPA official that "confirmed" as much, *id.* at 16,310, although Ohio has since acknowledged that, in 2021, the state brought a lawsuit against an iron and steel manufacturing facility for violating the ANR, citing the facility's exceedance of the lead NAAQS as proof. Neither the EPA's proposal nor the EPA's email exchange with the Ohio EPA official discussed whether the ANR had a role in NAAQS *enforcement*. 85 Fed. Reg. at 16,309-10.

---

[2]Available at https://www.sec.gov/Archives/edgar/data/1514705/000119312519287877/d799842ds3 htm. We may take judicial notice of public and government documents. *See City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655 n.1 (6th Cir. 2005); *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001).

Petitioners and over 1,800 other people submitted comments opposing the EPA's proposal. 85 Fed. Reg. 73,636, 73,637-39 (Nov. 19, 2020). The comments argued that: the EPA could not use 42 U.S.C. § 7410(k)(6) to remove the ANR from Ohio's SIP; the EPA's proposed rule lacked any basis for the assertion that the ANR was approved in error; the EPA's previous revisions to the ANR demonstrated that its approval of the ANR was purposeful and not in error; Ohio had the right to create regulations more stringent than required by the federal government; the ANR was an important regulatory tool in achieving and maintaining NAAQS; and removing the ANR from the SIP ignored the role of citizen suits in CAA enforcement.[3]  *Id.* at 73,637-39.

On November 19, 2020, the EPA finalized the removal of the ANR from Ohio's SIP. *See* 85 Fed. Reg. 73,636 (Nov. 19, 2020). According to the EPA, Ohio had not relied on the ANR to demonstrate implementation, maintenance, or—mentioned for the first time in the promulgation—enforcement of any NAAQS. The EPA explained that, due to "time and resource constraints," when the EPA reviewed states' SIPs in the 1970s and 1980s, it had primarily focused on rules addressing the CAA's new substantive requirements and approved many other proposed elements into states' SIPs with "minimal" review. *Id.* at 73,636-37. The EPA "now recognize[d] that some of these elements," like the ANR, "may be appropriate for state and local agencies to adopt and implement, but should not become federally enforceable SIP requirements." *Id.* at 73,637. The EPA concluded that "[s]uch rules generally have no connection to the purposes for which SIPs are developed and approved, namely the implementation, maintenance, and enforcement of the NAAQS." *Id.*

The EPA defended its use of the CAA error-correction provision, asserting that the "broad provision" gives the EPA "the discretion" to determine when a SIP approval was made in error, and that it had used the provision previously to remove state laws and regulations from other states' SIPS that were unrelated to NAAQS attainment or maintenance "or any other CAA requirement," 85 Fed. Reg. at 73,637-38 (citing *Ass'n of Irritated Residents v. EPA*, 790 F.3d 934, 948 (9th Cir. 2015)). With regard to the ANR, the EPA claimed that it had "articulated its

---

[3]The commenters—and later, Petitioners—also contended that the ANR was clearly integral to the SIP given its inclusion in every air permit issued by Ohio pursuant to the CAA. 85 Fed. Reg. at 73,638. As the EPA points out, all EPA-approved SIP provisions must be included in CAA permits, so the ANR's inclusion has little bearing on whether it should have been included in the SIP in the first place. *See* 40 C.F.R. § 70.6.

error and provided the basis thereof": because SIPS provide for NAAQS implementation, maintenance, and enforcement, and the ANR is not associated with any of those three things, the EPA maintained that it had therefore erred in approving the ANR for inclusion in Ohio's SIP. *Id.* This was the first time throughout this EPA action that the Agency asserted that the ANR was not associated with NAAQS enforcement.

The EPA also argued that excluding the ANR from Ohio's SIP was consistent with previous agency practice, and that it was the Agency's "longstanding" position that "measures to control non-criteria pollutants may not legally be made part of [a] SIP." *Id.* n.2. The EPA concluded Ohio was free to create environmental regulations more stringent than that required by the CAA, explaining that the ANR could not be part of the federally enforceable SIP because it had no "nexus" to NAAQS implementation, maintenance, or enforcement. *Id.*

The EPA further claimed that its 1984 approval of an ANR revision did not make the initial approval of the ANR "any less in error; rather, it merely indicates that EPA unfortunately repeated its error." 85 Fed. Reg. at 73,638. The EPA "[did] not dispute that state and local agencies may have used the [ANR] to achieve reductions in criteria pollutants," but contended that "using the nuisance rule to achieve criteria pollutant reductions is not equivalent to relying on the rule for SIP purposes." *Id.* at 73,639. The EPA defended its decision on the basis that, although removing the ANR from the SIP would preclude the rule's enforcement in federal court, facilities located in Ohio were still subject to the ANR, so removal had "no impact on the authority to bring citizen suits in state courts under state law." *Id.* The EPA asserted that, because Ohio had not relied on the ANR to demonstrate NAAQS implementation, maintenance, or enforcement, the EPA's prior decision to approve the ANR as part of the state's SIP was an error. Accordingly, the EPA removed the ANR from Ohio's SIP.[4] Petitioners timely filed their petition for review of the decision, and the State of Ohio intervened.

---

[4]Petitioners then filed a petition for reconsideration under 42 U.S.C. § 7607(d)(7)(B) that remains pending before the EPA.

## II. ANALYSIS

### A. Petitioners' Standing

Individual Petitioners Ballinger and Wall assert standing based on "reasonable concern" that removal of the ANR from Ohio's SIP will result in environmental, physical, and aesthetic harm. They also claim that they have standing to challenge the EPA's action because it deprives them of their procedural right to protect concrete and particularized interests in not suffering harm to their health or surrounding environment. Petitioners Sierra Club and Ohio Environmental Council assert associational standing. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

The EPA challenges Petitioners' standing on two bases. First, the Agency argues that reinstatement of the ANR is not likely to redress Petitioners' alleged physical, recreational, and aesthetic injuries. Second, because Petitioners remain able to bring nuisance claims in state court and have no legally protected interest in a federal forum, the EPA contends they have suffered no cognizable procedural injury. The EPA does not otherwise challenge Petitioners Sierra Club and Ohio Environmental Council's associational standing.

#### 1. The Law of Standing

An individual has standing to sue when she has suffered an injury in fact that is concrete and particularized, actual or imminent, and fairly traceable to the defendant's actions, and it is "likely," not "speculative," that a favorable decision would redress the injury. *Id.* at 180-81. Individuals can enforce procedural rights such as a citizen suit provision "so long as the procedures in question are designed to protect some threatened concrete interest . . . that is the ultimate basis of [their] standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573 n.8 (1992); *see id.* at 572 n.7 ("There is this much truth to the assertion that 'procedural rights' are special: The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy."). The party invoking federal jurisdiction bears the burden of establishing standing; when appealing a final agency action, the petitioner must prove standing based on a "'degree of evidence' . . . similar to

that required at summary judgment." *Sierra Club v. EPA*, 793 F.3d 656, 662 (6th Cir. 2015) (quoting *Lujan*, 504 U.S. at 561).

## 2. Petitioners' Physical, Recreational, and Aesthetic Injuries

Petitioners claim, and the EPA does not dispute, that air pollution violating the ANR may harm Petitioners sufficiently to injure their physical, recreational, and aesthetic interests. *See Friends of the Earth, Inc.*, 528 U.S. at 183 ("[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." (internal quotation marks omitted)).

The core of the parties' dispute is whether Petitioners' injuries are fairly traceable to the EPA's removal of the ANR from the SIP, or whether vacatur of the EPA's decision is likely to redress their injuries. These two requirements of standing "often run together," and we analyze them in tandem. *Sierra Club*, 793 F.3d at 665.

To start, the EPA argues that Petitioners have adequate alternative means of redressing any injuries caused by air pollution because they can still bring CAA citizen suits for violations of any CAA or SIP requirement other than the ANR. But "[t]he possibility of an alternative remedy, of uncertain availability and effect," does not deprive Petitioners of standing. *Okla. Dep't of Env't Quality v. EPA*, 740 F.3d 185, 190 (D.C. Cir. 2014). Furthermore, the ANR plays a role beyond litigation by creating incentives for Ohio-based facilities to limit their emissions. *See US Magnesium, LLC v. EPA*, 690 F.3d 1157, 1162 (10th Cir. 2012) (quoting the EPA as stating that, in addition to acting as a "safeguard" for CAA enforcement, "citizen enforcement provides . . . additional incentives for sources to design, operate, and maintain their facilities so as to meet their emission limits"); *Nat. Res. Def. Council v. EPA*, 643 F.3d 311, 318 (D.C. Cir. 2011) (describing EPA guidance on ozone regulation as injurious to plaintiffs in part because it eliminated a "powerful incentive" for third-party actors).

More broadly, the EPA asserts that Petitioners cannot show a sufficient likelihood of redressability. Under the EPA's theory, Petitioners must show that reinstating the ANR into Ohio's SIP will lead to Petitioners filing successful citizen suits against entities violating the

ANR, and that those suits will achieve emission reduction sufficient to redress Petitioners' injuries. And, because the redressability of Petitioners' injuries depends on the emissions produced by those third-party entities, the EPA contends that Petitioners cannot establish that vacatur of the ANR removal will redress their injuries.

In support of this theory of redressability, the EPA cites precedent in the Ohio district courts "rejecting" ANR claims. But the two cases cited by the EPA as supporting its claim that CAA citizen suits cannot be brought for ANR violations are not persuasive. In *Helter v. AK Steel Corporation*, the reviewing court concluded that the ANR was insufficiently specific to serve as the basis for a CAA claim. *See* No. C-1-96-527, 1997 WL 34703718, at *18-19 (S.D. Ohio Mar. 31, 1997). One other court then cited *Helter* to support the same finding. *See Freeman v. Cincinnati Gas & Elec. Co.*, No. 1:05-CV-179, 2005 WL 2837466, at *4 (S.D. Ohio Oct. 27, 2005). In reaching this conclusion, *Helter* relied on *Satterfield v. J.M. Huber Corp.*, 888 F. Supp. 1561, 1566-67 (N.D. Ga. 1994), which another Ohio district court later criticized for "purport[ing] to rely on the intent of Congress" while failing to cite any "expression of that intent in the legislative history." *Fisher*, 2006 WL 212076, at *5. The proposition in *Satterfield* that *Helter* cited, moreover, was based on a now-reversed case, *Nw. Env't Advocates v. City of Portland*, 11 F.3d 900 (9th Cir. 1993). In 2006, an Ohio court found *Helter* unpersuasive and held that a citizen suit to enforce the ANR was within the ambit of the CAA's citizen-suit provision. *Fisher*, 2006 WL 212076, at *5. It is appropriate to conclude that the Ohio ANR can be (and has been) used in CAA citizen suits.

The EPA correctly notes that "a plaintiff's standing fails where it is purely speculative that a requested change in government policy will alter the behavior of regulated third parties that are the direct cause of the plaintiff's injuries." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 938 (D.C. Cir. 2004), *abrogated on other grounds by Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017). But there are two issues with the EPA's claim that reinstatement of the ANR into Ohio's SIP will *only* redress Petitioners' injuries if they file citizen suits against ANR violators and win.

First, the EPA's logic would apply to all other SIP provisions enforced through CAA citizen suits, suggesting that all CAA citizen suits face an uphill battle to demonstrate standing.

Such a theory of redressability is so broad as to undermine the role of CAA citizen suits, which are instead meant to "increase enforcement of public law when the government lacks the resources or will to handle the entire task." *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1243 (10th Cir. 2021). Second, Petitioners have pointed to multiple instances where they used the ANR for NAAQS enforcement even when not in active litigation. These uses of the ANR include sending notices of intent to sue that have resulted in facility modifications and consent decrees, and submitting comments in response to proposed EPA action in Ohio. It is not "speculative" to say that reinstating the ANR as part of Ohio's SIP would permit Petitioners to use it to redress their injuries. Without the ANR, Petitioners are barred from doing so.

Similarly, the EPA's argument that the redressability of Petitioners' injuries depends on the emissions produced by third-party entities elides the role of the EPA itself. By removing the ANR from Ohio's SIP, the EPA has wholly prevented Petitioners from using it to challenge pollution in Ohio, without regard to the hypothetical outcome of such suits. The EPA's actions are unquestionably a link in the chain of causation and redressability. "Where Congress has expressed the need for specific regulations relating to the environment, that expression supports an inference that there is a causal connection between the lack of those regulations and adverse environmental effects." *Nat. Res. Def. Council v. EPA*, 542 F.3d 1235, 1248 (9th Cir. 2008). The EPA's theory of what constitutes redressability reaches too far. Petitioners have established that vacatur of the EPA's decision is sufficiently likely to redress injuries to their asserted physical, recreational, and aesthetic interests, and have therefore established standing based on those injuries.

### 3. Petitioners' Procedural Injury

Petitioners also claim that the EPA's action deprives them of the right to seek redress for ANR violations. The EPA responds that Petitioners have not suffered a cognizable procedural injury because they remain able to bring ANR claims in state court, and because they have no legally protected interest in adjudicating state-law nuisance claims in federal court.

The EPA begins by pointing to Section 3767.03 of the Ohio Revised Code, which provides that, "[w]henever a nuisance exists, . . . any person who is a citizen of the county in which the nuisance exists may bring an action in equity . . . to abate the nuisance and to perpetually enjoin the person maintaining the nuisance from further maintaining it." The EPA argues that this provision gives Petitioners the ability to bring nuisance claims for violations of the ANR in state court. But the county-citizenship requirement could affect the ability of Petitioners Sierra Club and Ohio Environmental Council to bring nuisance actions in counties where those organizations' *members* are harmed but where those organizations themselves are not headquartered. *See Ashtabula River Corp. Grp. II v. Conrail, Inc.*, 549 F. Supp. 2d 981, 989 (N.D. Ohio 2008). Petitioner Wall and other Sierra Club and Ohio Environmental Council members have also asserted recreational interests that likely span beyond their home county. But because the Ohio nuisance provision limits plaintiffs to suits in their home county, these Ohio citizens would be unable to bring nuisance suits under the ANR to seek redress of injuries to those interests.

The EPA next cites *Hager v. Waste Technologies Industries*, No. 2000-CO-45, 2002 WL 1483913 (Ohio Ct. App. June 27, 2002), for the proposition that citizens can bring air-nuisance claims in state court under Ohio's Air Pollution Act. But, as the *Hager* court explained, "only the attorney general and director of environmental protection" can "bring charges for violations of the administrative regulations" related to air pollution control. 2002 WL 1483913, at *8 n.5 (citing Ohio Rev. Code §§ 3704.03, 3704.06). The court "[did] not permit[] appellants directly to enforce [the ANR]." *Id.* Instead, the court pointed out that the Ohio legislature had "determined that violations of the standard of care and conduct listed" in the ANR "constitute an unreasonable interference with a public right for which a party may bring a claim for a public nuisance." *Id.* (citing *Brown v. Scioto Cnty. Bd. of Comm'rs*, 622 N.E.2d 1153, 1158 (Ohio Ct. App. 1993)). A public nuisance, however, "does not afford a basis for recovery of damages in tort unless there is particular harm to the plaintiff that is of a different kind than that suffered by the public in general." *Brown*, 622 N.E.2d at 1160. Under Ohio law, Petitioners could not prevail in a common-law nuisance suit unless, in addition to demonstrating a violation of the ANR, they also proved specific harm to themselves different from that suffered by the public.

State nuisance lawsuits are not a sufficient substitute for CAA citizen suits. *See Utah Physicians*, 21 F.4th at 1243. The two kinds of lawsuits have different goals and seek different remedies. *Compare Ellis v. Gallatin Steel. Co.*, 390 F.3d 461, 477 (6th Cir. 2004) (noting that people bringing CAA citizen suits "seek relief not on their own behalf but on behalf of society as a whole," so "'personalized' remedies are not a first priority of the Act"), *with Miller v. W. Carrollton*, 632 N.E.2d 582, 586-89 (Ohio Ct. App. 1993) (engaging in fact-specific analysis and weighing the "relative conveniences and comparative injuries to the parties" in determining what relief is appropriate in a nuisance action).

Similarly, the EPA suggests that Petitioners lack a "legally protected interest" in having a federal court adjudicate state-law nuisance claims and therefore have no injury in fact sufficient to establish standing. *See Lujan*, 504 U.S. at 560-61. It is true that state courts are competent to adjudicate state-law claims like nuisance claims, but again, state-law nuisance claims and CAA citizen suits for violations of the ANR are not interchangeable because important components of their requirements and remedies differ.

Petitioners can enforce their procedural right to bring a CAA citizen suit for violations of the ANR as long as the citizen-suit provision is "designed to protect some threatened concrete interest" that is the "ultimate basis" of Petitioners' standing. *Id.* at 573 n.8. Petitioners have identified ongoing concrete harms to their physical, recreational, and aesthetic injuries; they are not "raising only a generally available grievance about government." *Id.* at 573. None of the cases cited by the EPA compels a different conclusion; each involved plaintiffs who failed to establish threat or harm to concrete interests as the basis for their procedural injury. *See White v. United States*, 601 F.3d 545, 555 (6th Cir. 2010) (chilling effect of challenged statute insufficient to establish standing where plaintiffs' claimed injuries did not implicate constitutional rights); *Utah v. Babbitt*, 137 F.3d 1193, 1207, 1210 (10th Cir. 1998) (no standing where statute that plaintiffs asserted was violated did not confer claimed right); *Claybrook v. Slater*, 111 F.3d 904, 907, 909 (D.C. Cir. 1997) (same); *Arjay Assocs., Inc. v. Bush*, 891 F.2d 894, 898 (Fed. Cir. 1989) (same). In short, Petitioners have established standing based on their asserted procedural injury.

**B. Voluntary Remand**

With standing secure, we turn to the EPA's request for remand without vacatur to review its removal of the ANR. Specifically, the EPA seeks to reevaluate whether the error-correction provision was the most appropriate way to remove the ANR from Ohio's SIP, whether the EPA should have conducted the fuller analysis required when a state seeks to modify its SIP, and whether Ohio's disclosure of a 2021 lawsuit against an iron and steel manufacturer for violating the ANR affects the claimed basis for the EPA's action. The EPA intends to complete reevaluation within twelve months of the remand.

Petitioners do not oppose the EPA's request. But they ask that the court direct the EPA either to issue a proposed rule reinstating the ANR or to inform Petitioners and the court that it will not do so within six months, and to reconsider its position that the ANR lacks a nexus to the NAAQS. Finally, Petitioners appear to argue that vacatur should accompany any remand.

Intervenor State of Ohio opposes the remand request.

1. <u>Appropriateness of Remand</u>

Courts have "broad discretion" to grant an agency's request for remand made in response to a party's challenge to agency action. *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018). Given "considerations of judicial efficiency," voluntary remand may be appropriate "even without a change in the law or new evidence." *Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta* ("*Pellissippi*"), 375 F.3d 412, 417 (6th Cir. 2004). The agency need not "confess error or impropriety in order to obtain a voluntary remand," but it must "profess intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge." *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 387 (D.C. Cir. 2017). So long as the agency's reconsideration is not "unwarranted" or "abusive" and occurs "within a reasonable time," *Pellissippi*, 375 F.3d at 417-18, courts "prefer[] to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete," *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993). *See Belville Mining Co. v. United States*, 999 F.2d 989, 997 (6th Cir. 1993). Accordingly, "in the absence of apparent or clearly articulated

countervailing reasons," courts generally permit voluntary remands for an agency to reconsider its previous decision. *Pellissippi*, 375 F.3d at 416.

Although the State of Ohio opposes remand, it has provided relatively little rationale for its position beyond pointing to the abeyance that was previously granted so that the EPA could review the regulation at issue. Both Petitioners and the EPA agree remand is appropriate, and the issues the EPA intends to analyze on remand are at the heart of this case. Additionally, the EPA has yet to address Petitioners' petition for reconsideration of the ANR removal, which raises a number of the matters at issue here. Because it would conserve the court's and parties' resources and would serve judicial efficiency, we remand this action for further agency consideration.

2. Appropriateness of Vacatur

The remaining question is whether we should also vacate the ANR removal in light of the remand to the EPA.

As an initial matter, it is uncertain whether we may do so. Reviewing courts certainly have the power to vacate an agency action they find unlawful. *See* 5 U.S.C. § 706(2)(A); *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983). What is not clear is whether, in the Administrative Procedure Act context, we have the authority to vacate the EPA's action without first finding it invalid on the merits.[5] There is no consensus on this question. *See Nat'l Parks Conservation Ass'n v. EPA*, 803 F.3d 151, 157 (3d Cir. 2015) ("We did not reach the merits of the petition, though, since the EPA filed a motion for voluntary remand without vacatur in order to consider and respond in greater detail to the [petitioners'] concerns. We granted the motion . . . and remanded the matter to the EPA."). *But see Chlorine Chemistry Council v. EPA*, 206 F.3d 1286, 1288 (D.C. Cir. 2000) (noting that EPA's previous request for voluntary remand was denied where the agency had not offered to vacate the rule and

---

[5]Both parties agree that, if Petitioners have standing, the court has jurisdiction to review the petition under 42 U.S.C. § 7607(b)(1). In so doing, the court applies "the general standard of review for agency actions set forth in the Administrative Procedure Act (APA)." *Bahr v. EPA*, 836 F.3d 1218, 1229 (9th Cir. 2016) (quoting *Latino Issues Forum v. EPA*, 558 F.3d 936, 941 (9th Cir. 2009)); *accord Sierra Club v. Johnson*, 436 F.3d 1269, 1273 (11th Cir. 2006). *Compare* 42 U.S.C. § 7607(d)(9), *with* 5 U.S.C. § 706(2).

thus "would have left petitioners subject to a rule they claimed was invalid"). Of note, multiple courts in the United States District Court for the District of Columbia—where much litigation concerning federal agencies takes place—have concluded that a federal court cannot grant a request for vacatur without a determination of the merits. *See Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 135 (D.D.C. 2010); *Nat'l Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 4-5 (D.D.C. 2009); *Friends of Animals v. Williams*, No. 21-cv-2081 (RC), 2022 WL 3714226, at *7 (D.D.C. Aug. 29, 2022) (collecting additional cases).

We need not decide whether we can vacate the ANR removal, however, because the applicable standard does not counsel vacatur, as it is possible that the EPA may be able to justify the ANR removal on remand.[6] In general, whether vacatur is appropriate depends "on the seriousness of the agency error and the disruptive consequences of vacatur." *Long Island Power Auth. v. Fed. Energy Regul. Comm'n*, 27 F.4th 705, 717 (D.C. Cir. 2022) (citing *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)). Neither *Allied-Signal* factor is dispositive; rather, "resolution of the question turns on the [c]ourt's assessment of the overall equities and practicality of the alternatives." *Shands Jacksonville Med. Ctr. v. Burwell*, 139 F. Supp. 3d 240, 270 (D.D.C. 2015) (first citing *North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008); then *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1048-49 (D.C. Cir. 2002); and then *U.S. Telecom Ass'n v. FBI*, 276 F.3d 620, 626-27 (D.C. Cir. 2002)).

The seriousness of the agency's error depends on "how likely it is 'the [agency] will be able to justify' its decision on remand." *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 197 (D.C. Cir. 2009) (quoting *Fox Television Stations*, 280 F.3d at 1048-49). "When an agency may be able readily to cure a defect in its explanation of a decision, the first factor . . . counsels remand without vacatur." *Id.* at 198; *see Allied-Signal, Inc.*, 988 F.2d at 151 (remanding without vacatur where there was a "possibility" that the agency would be able to justify its inadequately supported decision). Similarly, where there is an incomplete record and "it is not at all clear that

---

[6]District courts that have concluded they have the discretion to vacate without a merits determination have applied the same framework as courts deciding whether to vacate after finding an agency action unlawful. *See Ctr. For Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1240-41 (D. Colo. 2011); *Friends of Animals*, 2022 WL 3714226, at *7; *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Salazar*, No. 07-cv-00876 (JEC)(WPL), 2009 WL 8691098, at *3 (D.N.M. May 4, 2009).

the agency's error incurably tainted the agency's decisionmaking process, the remedy of remand without vacatur is surely appropriate." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015).

Here, the first factor counsels against vacatur. The parties have focused their briefing largely on what statutory provision the EPA should have used to propose removal of the ANR, and it is possible that, on remand, the EPA may "be able to offer better reasoning," or, "by complying with procedural rules, . . . could adopt the same rule." *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015). Moreover, the EPA has not yet considered the pending petition for reconsideration of the final rule, which raises similar arguments to those before us. Because the EPA might be able to justify removing the ANR from Ohio's SIP— whether using the CAA's error-correction provision or through a SIP call—the first *Allied-Signal* factor advises against vacatur. *See Heartland Reg'l Med. Ctr.*, 566 F.3d at 199. *Cf. In re Clean Water Act Rulemaking*, 568 F. Supp. 3d 1013, 1026 (N.D. Cal. 2021) ("[T]he scope of potential revisions EPA is considering supports vacatur of the current rule because the agency has demonstrated that it will not or could not adopt the same rule upon remand.").

The second factor is "the disruptive consequences" of vacatur, "an interim change that may itself be changed." *Allied-Signal, Inc.*, 988 F.2d at 150-51 (quoting *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C. Cir. 1990)). The EPA's primary argument is that vacatur would be unnecessarily disruptive because the EPA may ultimately issue the same rule later. Petitioners respond that the only so-called disruption that vacatur would cause is a return to the status quo that existed from 1974 until 2020, when the ANR was part of Ohio's SIP and federally enforceable. Without vacatur, Petitioners argue that they will be prejudiced by waiting to be able to seek relief for ANR violations. The consequences the EPA identifies are generally insufficient to support the Agency's position. If the "regulatory uncertainty that typically attends vacatur of any rule" were alone enough to prevent vacatur, vacatur would never be warranted on voluntary remand. *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 85 (D.C. Cir. 2020). Additionally, the ANR was part of Ohio's SIP and federally enforceable for almost fifty years, so the regulatory regime that would result with

vacatur would be familiar to the EPA, litigants, and Ohio industry. The second *Allied-Signal* factor tips in favor of vacatur.

On balance, and particularly in light of the EPA's promise to limit the duration of its review, vacatur is not justified. The EPA intends to complete its reevaluation of the ANR removal within twelve months of remand, cabining the time that Petitioners are unable to seek relief for ANR violations. Time is of the essence, but "[t]he APA already requires agencies to act diligently, and although the Court fully expects EPA to comply with that requirement on remand, there is no need to impose an independent time limit as part of the Court's order." *Nat'l Res. Def. Council, Inc. v. EPA*, 301 F. Supp. 3d 133, 145 (D.D.C. 2018) (cleaned up). Given the overall equities of the situation, the still-pending petition for reconsideration before the EPA, and because "the agency may be able to rehabilitate its rationale for the regulation," *Comcast Corp. v. FCC*, 579 F.3d 1, 9 (D.C. Cir. 2009), vacatur of the ANR removal from Ohio's SIP is not appropriate during the pendency of remand.

## III. CONCLUSION

For the foregoing reasons, we **GRANT** the petition and **REMAND** without vacatur the EPA's removal of the ANR from Ohio's SIP to the Agency for further and expeditious review and action.